MARGARET TULLY, administratrix, *vs.* FITCHBURG RAILROAD
COMPANY.

Middlesex.    Feb. 1. — March 6, 1883.    FIELD & W. ALLEN, JJ., absent.

At the trial of an action against a railroad corporation for personal injuries occasioned to the plaintiff's intestate, by being struck by a locomotive engine belonging to the defendant, while crossing the railroad on foot, it appeared that the accident occurred in the daytime; that the railroad track was straight for a distance of five hundred feet from the crossing where the intestate was struck, in the direction from which the engine came, and then curved so slightly as to permit an approaching train to be seen for a much greater distance; that it was sixteen feet from certain posts set in a fence, through which the intestate passed in going upon the railroad, to the nearest rail upon which the engine came, and about five feet between the rails; and the only witness who saw the intestate at the time of the accident testified that he was moving quickly. *Held*, that the jury should have been instructed that the evidence would not warrant a finding that the intestate was in the exercise of due care.

At the trial of an action against a railroad corporation for personal injuries occasioned to the plaintiff's intestate, by being struck by a locomotive engine belonging to the defendant, the plaintiff contended that the defendant was negligent in not ringing the bell or sounding the steam-whistle; and that the speed was unreasonable. The only witness upon the first point testified that he did not remember whether or not he heard the bell or whistle. The only evidence as to the rate of speed came from two witnesses. One, who saw the train stop, testified that it stopped forty or fifty yards from the crossing where the intestate was struck. The other witness testified that he noticed that the train, after it had stopped, was about three hundred yards from the place of the accident. *Held*, that there was not sufficient evidence of negligence on the part of the defendant to warrant a verdict against it.

At the trial of an action against a railroad corporation for personal injuries occasioned to the plaintiff's intestate, by being struck by a locomotive engine belonging to the defendant, if the plaintiff fails to sustain the burden of proving negligence on the part of the defendant, no inference can be drawn, adverse to the defendant, from the fact that the engineer and fireman who were in charge of the engine at the time of the accident were in court, and were not called as witnesses by the defendant.

The fact that, in an action against a railroad corporation for personal injuries occasioned to the plaintiff's intestate by being struck by a locomotive engine, the jury took a view of the place where the accident occurred, will not warrant the inference that they acquired knowledge of material facts, which were not put in evidence, and which might have influenced their verdict, especially if the view was taken more than two years after the accident and at a different season of the year; or that they rejected as incorrect, from their own observations, the testimony of a civil engineer, who made measurements of certain distances in the vicinity of the place of the accident.

At the trial of an action against a railroad corporation for personal injuries occasioned to the plaintiff's intestate, by being struck by a locomotive engine, if the evidence is conflicting on the question whether the intestate survived his injuries, it should be submitted to the jury.

If a person, who has been struck by a locomotive engine, remains in a perfectly unconscious condition until his death, his administrator is not entitled, in an action against the corporation owning the engine, to recover substantial damages, in the absence of evidence of any considerable expense or loss incurred between the time of the injury and the death.

TORT, for personal injuries occasioned to the plaintiff's intestate, John Tully, by being struck by a locomotive engine belonging to the defendant, at a footpath crossing in Somerville. At the trial in the Superior Court, before *Rockwell*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which appear in the opinion.

*W. S. Stearns*, for the defendant.

*G. A. Bruce*, (*M. F. Farrell* with him,) for the plaintiff.

COLBURN, J. The first exception of the defendant is to the refusal of the court to rule that there was no sufficient evidence of due care on the part of the plaintiff's intestate.

It was necessary for the plaintiff to show affirmatively that her intestate was in the exercise of due care, or at least that there was nothing in his conduct, either of act or neglect, to which the injury could be attributed, in whole or in part. *Chaffee* v. *Boston & Lowell Railroad*, 104 Mass. 108. *Mayo* v. *Boston & Maine Railroad*, 104 Mass. 137. *Allyn* v. *Boston & Albany Railroad*, 105 Mass. 77. The accident occurred in daylight, a few minutes past six o'clock, P. M., on March 31, 1880. There is no suggestion that there was any fog or mist, or other atmospheric condition, to interfere with the view. The deceased lived near by, and was on foot, having full control over his own movements. The railroad track was straight for the distance of five hundred feet from the crossing where the deceased was struck, in the direction from which the train came, and then curved so slightly as to permit an approaching train to be seen for a much greater distance. It was sixteen feet from the posts set in the fence, through which the deceased passed in going upon the railroad, to the nearest rail upon which the approaching train ran, and about five feet between the rails. The only witness who saw the deceased at the time of the accident testified that he was moving quickly. If we assume that he was walking at the rate of four miles an hour, and that the train was running at the rate of fifty miles an hour, then the train moved twelve and a half feet while he moved a foot. If we

suppose that it was eight feet from the point of danger, on one side of the track, to the point beyond danger on the other side, then the train must have been within one hundred feet of the deceased before he incurred danger from it, and probably it was within a less distance.

If the deceased failed to look for an approaching train, he was negligent. In *Gaynor* v. *Old Colony & Newport Railway*, 100 Mass. 208, Mr. Justice Colt says, " No one can be said to be in the exercise of due care who places himself upon a railroad track without the assurance from actual observation that there is no approaching train." In *Allyn* v. *Boston & Albany Railroad, ubi supra,* Mr. Justice Morton says : " A railroad crossing is a place of danger, and common prudence requires that a traveller on the highway, as he approaches one, should use the precaution of looking to see if a train is approaching. If he fails to do so, the general knowledge and experience of men at once condemn his conduct as careless." If the deceased looked for a train, he must have seen the train approaching, and in such proximity that he could not cross the track without danger, and in that case he was negligent in attempting to cross. There being no conflict of evidence, we are of opinion that the jury should have been instructed that the evidence would not warrant their finding that the plaintiff's intestate was in the exercise of due care. *Allyn* v. *Boston & Albany Railroad, ubi supra.*

The next exception of the defendant is to the refusal of the court to rule that there was no sufficient evidence to prove that the defendant was careless or negligent.

The burden was upon the plaintiff to prove the negligence of the defendant. *Lane* v. *Crombie,* 12 Pick. 177. *Allyn* v. *Boston & Albany Railroad, ubi supra.* The contention of the plaintiff is, that the defendent was negligent in not ringing the bell or sounding the steam-whistle, and that the speed of the train was unreasonable. These are the only points in which it is suggested that the defendant was negligent.

The only evidence upon the subject of the ringing of the bell or sounding of the whistle came from one witness, and was as follows : " I thought I heard the sound of the train coming, and it sounded to me like the puffing of the engine, and about the bell ringing I cannot say whether I heard it or not. I disremember,

I was so excited at the time." And in answer to the question, "Did you hear any whistle?" he said, "I don't remember." This was all the evidence; and we are of opinion that it would not warrant the jury in finding that the bell was not rung, or that the steam-whistle was not sounded. If it is urged that, if the bell had been rung or the whistle sounded, the witness would have remembered it, it may be urged, with about the same force, that, if the bell had not been rung nor the whistle sounded, the witness would, under the circumstances, have noticed the omission, and remembered it. No legitimate inference can be drawn from the testimony one way or the other, and the attempt to draw an inference could only end in a mere conjecture.

The only evidence as to the rate of speed of the train was the testimony of one witness, who saw the train stop, that it stopped forty or fifty yards from the crossing; and of another, that he noticed that the train, after it had stopped, was about three hundred yards from the place of the accident. We are of opinion that no inference could be drawn from this evidence that the train passed the crossing at an unreasonable rate of speed. How soon the train would have stopped depended upon the state of the track and the weight of the train, upon the kind of brakes used, whether to be applied by the engineer or by men along the train, and, if the latter, how quickly the men responded to the signal, and upon how promptly, after the accident, the engineer applied the brakes or gave the signal, and how soon he discovered the accident; and upon these points there was no evidence whatever. Neither was there any evidence of how soon a given train at a given rate of speed could be stopped under any given circumstances, and this cannot be considered a matter of common knowledge. We are of opinion that there was not sufficient evidence of negligence on the part of the defendant to warrant a verdict against it.

It is urged by the plaintiff, that the jury might draw inferences from the fact that the engineer and fireman who were in charge of the train at the time of the accident were in court, and not called by the defendant. This would have been so, if the plaintiff had introduced evidence tending to sustain her claim; but she could not prove her case by making allegations,

and asking the jury to consider them proved because, if they were not true, the defendant had the means of showing it. These witnesses might have been called by either side.

It is contended by the plaintiff that, as the jury had taken a view, they may have had some knowledge of important facts, which they might regard as evidence in the case, which were not within the knowledge of the court; and that the judge could not properly have ruled that there was not sufficient evidence to sustain the plaintiff's case, when he could not be sure that he knew the whole evidence.

Views by the jury may be allowed in all cases, civil or criminal. Pub. Sts. *c.* 170, § 43; *c.* 214, § 11. And, in some cases, the jury have the right to take a view, or either party to require it. Pub. Sts. *c.* 49, § 49. Views are allowed even in capital cases. *Commonwealth* v. *Knapp*, 9 Pick. 495, 515. *Commonwealth* v. *Webster*, 5 Cush. 295.

In many cases, and perhaps in most, except those for the assessment of damages, a view is allowed for the purpose of enabling the jury better to understand and apply the evidence which is given in court; but it is not necessarily limited to this; and, in most cases of a view, a jury must of necessity acquire a certain amount of information, which they may properly treat as evidence in the case. *Parks* v. *Boston*, 15 Pick. 198. Though the knowledge acquired by a jury from a view may be such, in some cases, as to embarrass a court in passing upon the question of the sufficiency of the evidence to warrant a verdict for the plaintiff, or upon a motion for a new trial, for the reason that the verdict is against the evidence, or that the damages are excessive, yet a judge must, in each case, determine, from the circumstances of that case, whether he is so far in possession of all the material evidence as to enable him to act intelligently. The fact that the jury have had a view presents no insuperable obstacle to the granting a new trial, on the ground that the verdict is against the evidence, or the damages excessive. *Harding* v. *Medway*, 10 Met. 465. *Fitchburg Railroad* v. *Eastern Railroad*, 6 Allen, 98.

In the present case, we are unable to see that the jury, from the view, could have acquired any knowledge of material facts which were not put in evidence in court, or that the presiding

justice could have supposed that they had such knowledge. The view was not taken until more than two years after the accident, and at a different season of the year.

It is suggested by the plaintiff, that the jury might have rejected the testimony of Elliot, as incorrect, from their own observations. We cannot say that this is impossible, but it is so highly improbable as to require little attention. Elliot was a civil engineer, and made measurements, and the material part of his testimony was, that for the distance of five hundred feet, towards Boston, from the posts in the northeast fence, the railroad and rails were straight. He must have testified after the view, as his measurements were not made until the evening of the day of the view, and it cannot with reason be supposed that the jury undertook to reject, as not in accordance with their previous general observations, the sworn measurement of an engineer, which, so far as appears, the plaintiff did not question at the trial.

The next exception of the defendant is to the refusal of the court to rule that there was no sufficient evidence that the plaintiff's intestate survived his injuries a sufficient time to enable the plaintiff to maintain this action.

We are of opinion that there was evidence upon this subject to be submitted to the jury. There was some conflict in the testimony, and it is not readily determined how far the motions and sounds testified to indicated life, or how far they indicated mere spasmodic muscular contractions accompanying a violent death, or how far they may have been caused by moving the body. If the intestate lived after he was struck, though the time might be brief, the cause of action survived. *Bancroft* v. *Boston & Worcester Railroad*, 11 Allen, 34.

The last exception of the defendant is to the refusal of the court to rule that there was no sufficient evidence to prove that the plaintiff was entitled to recover substantial damages.

We think this instruction should in substance have been given, assuming that the plaintiff had maintained her case. All the evidence tended to show that the intestate remained in a perfectly unconscious state ever after he was struck, so that nothing could be recovered for physical or mental suffering; and there was no evidence of any considerable expense or loss

incurred between the time he was struck and his death. *Kennedy* v. *Standard Sugar Refinery*, 125 Mass. 90. Bodily mutilation was not an element of damage to the intestate, who had received his death-blow, and ever after remained unconscious.

We have passed upon all the questions, as there must be a new trial, at which the evidence may be different, and deciding one might leave the others to come up again, upon the same facts as now presented.               *Exceptions sustained.*