CAROLINE M. HUBBARD, executrix, *vs.* BOSTON AND ALBANY RAILROAD .COMPANY.

Berkshire.     March 13, 1893. — June 21, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Railroad Accident — Grade Crossing — Ringing of Bell — Evidence — Due Care — Negligence.*

In an action against a railroad corporation for causing the death of the plaintiff's intestate at a crossing at grade of a highway by the railroad, the burden of proof is on the plaintiff to show that the bell of the engine was not rung continuously or alternately with the sounding of the whistle for eighty rods from and until the engine had passed the crossing, and the testimony of two men working near the crossing, one of whom testified that he did not hear any bell, and then immediately added that he never noticed anything at all about the bell at the time, and the other of whom testified that he did not hear any bell rung at the time of the accident, is not sufficient to sustain the plaintiff's burden of proof.

TORT, by the executrix of the will of William L. Hubbard, for causing his death at a crossing at grade in Richmond by the railroad tracks of the defendant.

At the trial in the Superior Court, before *Bishop*, J., there was evidence tending to show that the deceased, who was between fifty and sixty years of age, but whose sight and hearing were good, was, in the forenoon of May 18, 1891, driving in a wagon along the highway, and that, as he was approaching the railroad tracks of the defendant on the southerly side, he stopped at a point between fifty and a hundred feet from the railroad crossing to wait for the passage of a western bound freight train on the northerly track ; that when the rear end of the freight

train had passed two or three car lengths beyond the crossing the deceased stood up in his wagon, hit his horse with the lines, and drove upon the track at a slow trot, and was struck by an east bound express passenger train on the southerly track, and received the injuries which resulted in his death. It further appeared that the passenger train whistled at a whistling post about eighty feet west of the crossing, and again when the deceased drove upon the railroad track, and that he was looking west and saw the express train.

One Nichols testified that at the time of the accident he was putting the boards down around the bottom of a hen-house on the westerly side of the highway north of the railroad track; that his attention was first attracted to the scene by the slowing up of the passenger train; that he then looked up, and saw the wheel of the wagon flying in the air; that he did not see the passenger train, nor did he hear any whistle when he saw the passenger train slowing up, but that he saw the freight train just before the passenger train came up; that he did not see the deceased drive toward the crossing; that he first noticed the freight train just before the passenger train came up, but the freight train had passed out of his sight before he saw the passenger train; that if the freight train was passing that crossing, a whistle from either direction might be heard by one standing near it; and that the passenger train that day was a little late. He further testified: " I heard the express train whistle before the accident at the crossing; I heard it perhaps for half an hour, of course not as long as that; I could not say whether I heard it whistle at the first whistling post west of the station or not. I don't know. I was not paying any attention to it. I did not hear any whistle immediately upon the accident happening. I did not hear any bell. I never noticed anything at all about the bell at the time." On cross-examination he testified: " I do not say the express did not whistle at the regular whistling post. I did not say whether it did or not. I was not noticing."

One Ven Bremer testified that at the time of the accident he was working for Nichols on the hen-house fence; that he first looked at the passenger train when he heard the engine give a short whistle, and at that moment the deceased was thrown off his wagon. He also testified: " I did not hear any bell rung

that day at the time of the accident. I don't think I heard any whistle, except this one I spoke of. I could hear the noise of the cars when they passed there."

The defendant also introduced evidence, and the engineer of the passenger train testified, that the whistle was blown at the whistling post eighty rods west of the crossing, and the bell was rung from the time the whistle was blown until after the crossing was passed. The first that he saw of the deceased was just as the horse's head appeared from behind a ledge of rocks on the westerly side of the road, and he immediately blew a second whistle to give warning at a distance of about two hundred feet from the crossing. When the deceased appeared " he apparently then was whipping his horse up with the end of the lines to urge him across the crossing; he apparently heard the whistle, and looked right at me when I first saw him."

The fireman of the passenger train testified that there were two long and two short whistles blown at the whistling post, and the bell was rung continuously up to and over the crossing.

After the evidence was in the defendant asked the judge to rule that, upon the whole evidence, the plaintiff was not entitled to recover, and to direct a verdict for the defendant. The judge stated that he should so rule unless the plaintiff desired to go to the jury upon the question of whether the bell was rung or the whistle sounded as required by the statute, and if not, whether the plaintiff's intestate was guilty of gross or wilful negligence. The plaintiff elected to go to the jury upon these issues, and the judge submitted to the jury, with other instructions which were not excepted to, the following questions, in writing, with instructions, if they should answer either one of the questions in the affirmative, to return a verdict for the defendant; but if they answered them in the negative, to return a verdict for the plaintiff. First, " Was the bell of the engine of the express train rung continuously, or alternately with the sounding of the whistle of the engine, for the distance of eighty rods from the crossing, and until the engine had passed the crossing?" Secondly, " Was the deceased guilty of gross or wilful negligence at the time of the collision, and did the same contribute to the injury?"

The jury answered both questions in the negative, and returned a verdict for the plaintiff; and the defendant alleged exceptions.

*M. Wilcox,* for the defendant.

*J. F. Noxon,* for the plaintiff.

MORTON, J.    The case was submitted to the jury by the presiding justice on two questions : first, Was the bell rung continuously or alternately with the sounding of the whistle, for eighty rods, from and until the engine passed the crossing ? and, secondly, Was the plaintiff's intestate guilty of gross or wilful negligence ?

The burden was on the plaintiff to show that the bell was not rung continuously or alternately with the sounding of the whistle. If we assume in favor of the plaintiff, what the defendant appears to concede, that, though the whistle may have been blown at the whistling post, it was not sounded continuously till the crossing was reached, that is not decisive in his favor.    The statute requires the whistle to be blown or the bell to be rung continuously or alternately.    The only testimony on which the plaintiff relies to show that the bell was not rung continuously is the testimony of two men working near the crossing, one of whom testified that he did not hear any bell, and then immediately added that he never noticed anything at all about the bell at the time, and the other of whom testified that he did not hear any bell rung at the time of the accident.    Neither says it was not rung.    If their situation and occupation had been such that naturally they would have observed whether the bell was or was not rung, then the fact that one or both of them said they did not hear it rung would be evidence tending to show that it was not rung.    But the testimony does not disclose such a state of things.    On the contrary, both witnesses had their attention engrossed by the building of the fence, and neither was interested for any reason in the approach of the train.    To say that one did not hear when there was not only no reason why he should hear, but, from his occupation, reason why he should not hear, is very little if at all stronger than to say one does not remember to have heard.    We think the plaintiff has failed to sustain the burden of proof that was upon her to show that the bell was not rung continuously.    *Tully* v. *Fitchburg Railroad,* 134 Mass. 499.    *Menard* v. *Boston & Maine Railroad,* 150 Mass. 386, 387.    *Johanson* v. *Boston & Maine Railroad,* 153 Mass. 57.    *Hillyer* v. *Dickinson,* 154 Mass. 502.

*Exceptions sustained.*