RICHARD A. WALSH, administrator, *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.   November 16, 1897. — May 18, 1898.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Due Care — Negligence — Ringing of Bell — Evidence — Burden of Proof.*

In an action under Pub. Sts. c. 112, § 212, the plaintiff is bound to show that the deceased was in the exercise of due care, and that the accident happened through the negligence of the defendant or the unfitness or negligence of its servants; and an action cannot be maintained where it is only a matter of conjecture whether a person killed while attempting to drive over a crossing in front of an approaching train looked or listened, before crossing, or took any precautions to ascertain whether a train was approaching, or whether his view was obscured, or he was misled by the lack of signals or warning by the gateman.

In an action under Pub. Sts. c. 112, § 213, the plaintiff is not obliged to show that the deceased was in the exercise of due care, but he is entitled to recover if it appears that the defendant neglected to give the signals required by law, and

that such neglect contributed to the injury; and the burden is on the defendant to show that the deceased was guilty of gross or wilful negligence.

At the trial of an action under Pub. Sts. c. 112, § 213, evidence that persons did not hear the bell of the engine rung is competent, in connection with other evidence that they had passed over the crossing when the accident occurred, and, after having gone a short distance, had their attention attracted solely by the approaching train, toward which they turned, and watched it as it approached.

At the trial of an action under Pub. Sts. c. 112, § 213, evidence that the accident occurred at half past nine o'clock in the evening; that the deceased when last seen by any one but the gateman was slowly approaching the railroad crossing seated in an open carriage, and driving a safe horse; that his view of the track in the direction from which the train was coming was obstructed; that, although he was familiar with the crossing, he did not know that the train by which he was struck had recently begun running; that the bell of the engine had not been rung nor the whistle blown before approaching the crossing; and that the gateman had given no warning of the approaching train, — is competent for the consideration of the jury on the question of the negligence of the defendant.

TORT, under Pub. Sts. c. 112, §§ 212, 213, by the administrator of the estate of John Walsh, to recover damages for the death of his intestate on August 22, 1895.    Writ dated November 15, 1895.

The first count of the declaration alleged that on or about August 22, 1895, at about a quarter past nine in the evening, the plaintiff's intestate was lawfully travelling on Winn Street, a highway in Woburn which is crossed by the railroad tracks of the defendant at grade, and forms a crossing such as is described in Pub. Sts. c. 112, § 163; that while the plaintiff's intestate was in the exercise of due care, and while the gates were raised and there was no indication of danger, he undertook to cross the railroad tracks at such crossing, when he was struck by one of the defendant's locomotive engines and received injuries which caused his death; that the accident happened through the gross negligence, carelessness, and unfitness of the defendant's servants in failing to have the gates lowered when the train was about to cross the street, or in giving proper warning or signals at the crossing.

The second count, after stating the manner of the accident substantially as in the first count, alleged that the accident was caused by the servants of the defendant, who neglected to give the signals when approaching said crossing by bell or whistle as required by Pub. Sts. c. 112, § 163, and that such negligence contributed to the injuries and death of the plaintiff's intestate. Answer: a general denial.

Trial in the Superior Court, before *Hardy*, J., who allowed a bill of exceptions in substance as follows.

The plaintiff's intestate was killed at about half past nine o'clock in the evening of August 22, 1895, on the tracks of the defendant, at a place where Winn Street in Woburn crosses the railroad tracks at grade. When last seen by any one but the gateman, he was slowly approaching the crossing and seated in an open two-seated carriage, driving a safe horse, which he had driven for two years before the accident.

The plaintiff introduced evidence tending to show that the railroad and Winn Street cross each other nearly at right angles; that from Winn Street an approaching train cannot be seen until it has passed under a bridge at Kilby Street, distant about four hundred and twenty-five yards; that from the direction in which the deceased approached the crossing no part of the track between Winn and Kilby Streets is visible, until the junction of Winn and Middlesex Streets, about one hundred and sixty feet from the crossing, is reached; and that trees on Middlesex Street, and a bill board and other structures parallel with Winn Street between Middlesex Street and the crossing, obstruct a view of the track.

The plaintiff further introduced evidence tending to show that the crossing was equipped with gates, but that they were not operated later than a quarter past seven in the evening, after which lanterns were hung upon the upraised gates, and the gateman usually signalled the approach of trains by swinging a lighted lantern upon the crossing; that although the gateman was seen outside his gatehouse a few minutes before the accident, no light could at that time be seen either inside or outside the gatehouse, about the crossing or on the gates, and that he gave no light or signal of any kind; and that no whistle was blown by the locomotive between Kilby Street and the crossing, nor within a distance of at least eighty rods from the crossing.

The defendant admitted that at the time of the accident the gates at the crossing were not lowered, and the engineer of the locomotive, called by the defendant, testified that he did not blow the whistle as he had orders not to do so.

Various witnesses called by the plaintiff testified that they were either standing near or approaching the same crossing in an opposite direction from the deceased, had an unobstructed

view of the crossing and the approaching train, and that they saw no light or lantern swung by the gateman at the crossing, which when the train approached was in darkness.

One Mrs. Curry testified for the plaintiff that on the evening of the accident she and her husband had been with a friend to the railroad station at Woburn Centre, and in returning home they reached the Winn Street crossing just as the train which caused the accident was approaching; that she asked her husband to turn and see the train; and that they stopped and faced the train, had an unobstructed view of it, and her attention was concentrated on it all the time. Both Mrs. Curry and her husband testified that they heard the usual noise of an approaching train, but that they heard no whistle blown or bell rung before the train reached the crossing; and that after it had passed the crossing they turned and went home, unaware of the accident.

One Horner, a gateman of the defendant, testified for the defendant that he attended the gates from half past six in the morning until a quarter past seven at night; that at half past nine he returned and flagged this train, which was an extra and ran regularly only in the summer, with a hand light; that on the night of the accident, when he received the electric signal of the approaching train, he took his white light, crossed the street, stood in the middle of it, and gave the signals to the cars as they were coming down; that he then saw the deceased, perhaps three rods off, coming along quickly in a carriage; that, knowing that the train was coming, he swung the lantern in the horse's face, and said, " You won't have time to cross," or, " You won't have time to go through, you are too close "; that not knowing who was in the carriage he did not take hold of the rein; and that the deceased, replying, " I'm going through," drove right along and was struck by the engine. On cross-examination he testified that the deceased was driving at a " pretty smart trot, . . . from four to five miles an hour."

One Hill, a fireman, testified for the defendant that as the train approached the crossing he was sitting in his seat on the left hand side of the cab, and had his head out of the side window, and that he saw no light or signal of any kind at the crossing, nor gateman nor lantern, before the accident, but saw the gateman after the accident, and that he then had a lantern. Both

he and the engineer testified that he began to ring the bell as soon as they passed the Kilby Street bridge, and that they had been running this train only eleven days.

Other witnesses who were driving towards the crossing testified that they saw no light or signal there before the accident.

The foregoing was all the material evidence in the case, at the close of which the judge ruled that the action could not be maintained, and directed the jury to return a verdict for the defendant. The plaintiff alleged exceptions.

*F. C. Dowd*, for the plaintiff.

*S. Lincoln & H. W. Ogden*, for the defendant.

MORTON, J.  Under the first count the plaintiff was bound to show that his intestate was in the exercise of due care, and that the accident happened through the negligence of the corporation or the unfitness or gross carelessness of its servants.  We do not understand the plaintiff to contend that there was any evidence tending to show that the corporation was negligent.  If, as the evidence tended to show, the gateman gave no signal or warning of the approaching train, we think that the jury would have been justified in finding that he was guilty of gross negligence.  *Tilton* v. *Boston & Albany Railroad*, 169 Mass. 253.  But we think that the plaintiff did not sustain the burden of showing that his intestate was in the exercise of due care.  If the testimony of the gateman is to be believed, it would tend strongly to show that the plaintiff's intestate was guilty of gross negligence.  It is possible, however, that the jury might not believe the gateman.  If that is laid one side, then there is nothing to show that the plaintiff's intestate as he approached the crossing looked or listened, or took any precautions to ascertain whether a train was coming.  It is true that he may have been misled somewhat by the absence of the statutory signals, if those were not given, and by the open gates and the want of a light, and that, if he had looked his view of the approaching train might have been obscured by trees, fences, and buildings.  But whether he was misled, or whether he looked or listened, or tried to look or listen, is all a matter of conjecture.  Negligence on the part of the servants of the corporation will not excuse negligence on his part.  *Butterfield* v. *Western Railroad*, 10 Allen, 532.  *Tyler* v. *Old Colony Railroad*, 157 Mass. 336.  And the circumstances do not appear to have been such as to excuse him from exercising

the care which every traveller is bound to exercise as he approaches a railroad crossing.  *Chase* v. *Maine Central Railroad*, 167 Mass. 383.  *Merrigan* v. *Boston & Albany Railroad*, 154 Mass. 189.  *Fletcher* v. *Fitchburg Railroad*, 149 Mass. 127.

Under the second count, the plaintiff was not obliged to show that his intestate was in the exercise of due care.  He was entitled to recover if it appeared that the corporation neglected to give the signals required by law, and that such neglect contributed to the injury.  The corporation could relieve itself from liability by showing that the plaintiff's intestate was guilty of gross or wilful negligence, and that such negligence contributed to the injury.  Pub. Sts. c. 112, § 213.  The burden of proof was on the corporation to show this.  *Copley* v. *New Haven & Northampton Co.* 136 Mass. 6, 10.  The defendant admits that the whistle was not blown, the engineer having had orders not to blow it.  We think that there was evidence for the jury on the question whether the bell was rung, the statute being that the whistle must be blown or the bell rung. · The circumstances attending the observation of the two witnesses whose testimony principally was relied on to show that the bell was not rung relieve it from the objection which has been found in some other cases to exist to the introduction of similar testimony.  The evidence tended to show that they passed over the crossing where the accident occurred, and after having gone a short distance, their attention being attracted by the approaching train, they stopped and turned round and watched it as it approached the crossing.  If their testimony is believed, their attention was directed solely to the approaching train.  It was not distracted by anything else.  Under such circumstances, it cannot justly be said, we think, that, where a witness testifies that he did not hear the bell rung, it is not some evidence that it was not rung.  The probability that, if the bell had been rung, it would have impressed itself in some manner on his consciousness, cannot be regarded as so remote, we think, as to render his testimony inadmissible because he is unable to say positively that it was not rung.  *Menard* v. *Boston & Maine Railroad*, 150 Mass. 386.  *Johanson* v. *Boston & Maine Railroad*, 153 Mass. 57.  *Davis* v. *New York, New Haven, & Hartford Railroad*, 159 Mass. 532.  *Lamoureux* v. *New York, New Haven, & Hartford Railroad*, 169 Mass. 338.

The defendant contends that it does not appear that the failure to ring the bell contributed to the accident, and that the plaintiff's intestate was grossly careless. But it is to be presumed that persons approaching a place of danger, like a railroad crossing, ordinarily will pay some attention to signals given for the purpose of warning them of approaching trains. The requirement that signals shall be given is based on this assumption. It is not an unreasonable inference, therefore, that, if there is an accident at a railroad crossing, and the bell was not rung nor the whistle blown, that fact, in the absence of evidence to the contrary, had something to do with it. *Doyle* v. *Boston & Albany Railroad*, 145 Mass. 386.

Passing over the testimony of the gateman, which, as already observed, the jury might not believe, we think that it cannot be held, as matter of law, that the plaintiff's intestate was grossly careless. The accident happened about half past nine in the evening. When last seen by any one but the gateman, the plaintiff's intestate was driving slowly towards the crossing, seated in an open two-seated carriage. The horse was a safe one, which he had driven for two years before the accident. The gates were up, and there was evidence from which the jury might have found that the gateman gave no warning of the approaching train. His view in the direction from which the train was coming was obstructed. Though he was familiar with the crossing, it does not appear that he knew that this train, which had been running only eleven days, had been put on. Taking the situation as the jury might have found it to be, we cannot say that it appears, as matter of law, that he was grossly negligent. *Lamoureux* v. *New York, New Haven, & Hartford Railroad*, 169 Mass. 338, 340. The difficulty under this count is that the defendant has the burden of proof on the question of gross negligence, as the plaintiff has it on the question of due care under the first count. The sections of the statute under which the declaration is drawn make a distinction between the two.

On account of the error in the ruling so far as the second count is concerned, the entry must be exceptions sustained, but the new trial will be limited to the second count.

*So ordered.*