PATRICK J. McDONALD, administrator, *vs.* NEW YORK CEN-
TRAL AND HUDSON RIVER RAILROAD COMPANY.

Berkshire.    September 13, 1904. — October 18, 1904.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Railroad. Evidence,* Hearsay, Presumptions and burden of proof.

In an action against a railroad company under R. L. c. 111, § 268, for the loss of
life of the plaintiff's intestate at a grade crossing, alleged to have been caused
by the defendant's neglect to give the signals required by § 188 of the same
chapter, if two witnesses who might have heard the signals testify that they
were not given, and other witnesses, who were in such positions that if the
signals had been given they easily might have heard them, testify that they did
not notice the signals or do not remember them, there is evidence to justify a
finding that the signals were not given.

At the trial of an action against a railroad company under R. L. c. 111, § 268, for
causing the death of the plaintiff's intestate, a boy of seven and one half years of
age, at a grade crossing, by a failure to give the signals required by law, a boy
of about the same age who was coming home from school with the intestate
when the accident happened, after testifying that he and the intestate did not
run down a hill to see the train pass, testified that he told his father and mother
about the occurrence and told them the truth about it that night. The defend-
ant called the father and mother, who testified that their son told them that the
plaintiff's intestate said "Let's run down and see the train go by," that they
started on a run down the hill, that the intestate ran past him half way down
the hill and got there before he did, and that he next saw him lying in the snow.
*Held,* that the statement of the boy to his father and mother was not evidence
of the truth of the things stated, being none the less hearsay because the boy
testified that he told his father and mother the truth, and was competent only to
impeach the boy's testimony by showing that he at other times had made state-
ments inconsistent with his statement on the witness stand.

In an action against a railroad company under R. L. c. 111, § 268, for the loss of
life of the plaintiff's intestate at a grade crossing of a highway caused by the
defendant's failure to give the signals required by § 188 of the same chapter, if
it appears that the required signals were not given, the plaintiff need only prove
further that his intestate was killed by the train at the crossing. If the defend-
ant relies upon gross negligence of the intestate as a defence, he must establish
it by evidence.

TORT under Pub. Sts. c. 112, § 213, (R. L. c. 111, § 268,) for
the loss of life of the plaintiff's intestate, a boy seven and one
half years of age, at a grade crossing of the defendant's railroad
in Cheshire on December 4, 1901, alleged to have been caused
by the defendant's failure to give the signals required by Pub.
Sts. c. 112, § 163, St. 1890, c. 173, (R. L. c. 111, § 188.)

At the trial in the Superior Court before *Stevens*, J., the jury returned a verdict for the plaintiff in the sum of $1,800; and the defendant alleged exceptions, raising the questions stated in the opinion.

*J. C. Crosby & J. F. Noxon*, for the defendant.

*T. F. Cassidy & P. J. Ashe*, for the plaintiff.

BARKER, J.   The defendant's train struck and killed the plaintiff's intestate, a schoolboy of seven and one half years of age, at a grade crossing, as the boy was going home from school about four o'clock of a winter afternoon.   The action was in tort to recover for his death.   At the trial the verdict turned upon the points whether the whistle was blown and the bell rung as required by the statutory provisions now embodied in R. L. c. 111, § 188, and, if not, whether the failure to give the signals contributed to the accident, and whether if the signals were not given the boy was guilty of gross negligence.

1. The first question argued upon the plaintiff's brief is whether there was evidence to justify a finding that the statutory signals were not given.

Fourteen or more witnesses testified on the point.   Some of them, including the engineer and fireman of the train, testified positively that the whistle was blown and the bell rung; many others testified either that they did not notice or did not remember.   Two witnesses testified positively that the whistle was not blown nor the bell rung.   Some of the witnesses who testified that they did not notice the signals or did not remember were in positions where, if the signals had been given, the witnesses might be expected to notice them and to recall the fact.

In this state of the evidence the question whether there was a failure to sound the whistle and ring the bell as required by the statute was for the jury.   It was not the case of a single person who testified that he did not remember as in *Tully* v. *Fitchburg Railroad*, 134 Mass. 499; or simply of several persons who testified either that they did not notice or did not hear, as in *Hubbard* v. *Boston & Albany Railroad*, 159 Mass. 320, 323.   At least two witnesses who were so placed that they might have heard the signals if given took the responsibility of testifying that the signals were not given.   See *Johanson* v. *Boston & Maine Railroad*, 153 Mass. 57, 59; *Lamoureux* v. *New York, New Haven, &*

*Hartford Railroad*, 169 Mass. 338; *Walsh* v. *Boston & Maine Railroad*, 171 Mass. 52, 57. Others of the witnesses were in such positions that if the signals had been given the witnesses easily might have heard. *Menard* v. *Boston & Maine Railroad*, 150 Mass. 386. Their failure to hear or notice a signal was competent for the consideration of the jury. *Daniels* v. *New York, New Haven, & Hartford Railroad*, 183 Mass. 393, 396.

2. The bill of exceptions raises a question of evidence which it is well to consider before dealing with the other exceptions. The only count on which the case went to the jury was the one alleging the failure to give the statutory signals and was founded on the provisions now embodied in R. L. c. 111, § 268. It is settled that if the gross or wilful negligence of the person killed is relied on as a defence to such a count the burden of proving such negligence is upon the defendant. *Copley* v. *New Haven & Northampton Co.* 136 Mass. 6. *Walsh* v. *Boston & Maine Railroad*, 171 Mass. 52, 58. If the only reasonable conclusion to be drawn from the evidence is that the person killed was guilty of such negligence, or was engaged in committing an unlawful act, the judge should order a verdict for the defendant. See *Emery* v. *Boston & Maine Railroad*, 173 Mass. 136, 139.

It was not in dispute that the deceased came out of school shortly before the passing of the train, and started homeward over a highway leading first in a direction parallel with and not far from the railroad and then turning and leading over the crossing. He was in company with another schoolboy of about his own age whose route homeward was over the same crossing. When the deceased was struck by the train the two boys were within a few feet of each other. The boy who was in company with the deceased was a witness at the trial. The substance of his testimony was that the deceased and himself were together at first, and that on the part of the road which was parallel with the railroad the deceased ran ahead a little way and got past the witness and kept in advance to the crossing; that the witness was on the crossing when he saw the train coming and turned and went back; that he stood six or seven feet from the cars when the train went by; that as the witness turned and went back he did not see the deceased as he remembered, and that he did not remember that the deceased was ahead of or

behind him as the witness came down toward the crossing, and that he did not remember that he saw the deceased again after the witness turned and went back; that he did not see the train strike the deceased; that while the train was passing the witness was looking down towards the depot, "about a minute," and then turned around and saw the deceased lying down on the snow bank beside the track; that he at the time of the trial was seven years of age and going on eight; that he and the deceased usually went home from the school together and that it was a frequent thing for this train to pass as they were going home; that the witness did not remember whether the deceased said anything when he started to run, that they did not hear the train and so did not run down, and that he did not remember whether the deceased or himself said anything. He further testified that at his home on the same night he told his father and mother about the occurrence, and that he told his father and mother the truth about it that night.

The father and mother were both called as witnesses by the defendant and their testimony tended to show that their son told them that he and the deceased left school together and started for home; that when they got to Bowen's Hill (on the road parallel with the railroad) they heard the train whistle and the deceased said — "Let's run down and see the train go by", and that they started on a run down the hill and the deceased ran past him midway of the hill and got down there before he did and he did not pay any more attention to the deceased until he saw him lying in the snow.

The jury were instructed that this testimony of the father and mother was not any affirmative evidence of what took place, and was competent only for the purpose of showing that at some other time the boy had made statements inconsistent with his statement made upon the witness stand and was not competent for the purpose of showing that the statement made to his father and mother was a true statement.

The defendant excepted to this part of the charge and now contends that the statement to the father and mother should be deemed evidence of the truth of the occurrence so stated.

We are of opinion that the instruction was correct. The testimony of the boy that he told his father and mother the truth

about the occurrence that night, did not change the statements then made by him from hearsay. They were still declarations made without the sanction of an oath and with no opportunity for cross-examination by parties in interest. In *Jack* v. *Woods*, 29 Penn. St. 375, and in *Rothrock* v. *Gallaher*, 91 Penn. St. 108, the declarations considered were testimony given under oath in court in former trials, and were offered because of failure of mind on the part of the witness. See *Day* v. *Cooley*, 118 Mass. 524 ; *Brooks* v. *Weeks*, 121 Mass. 433, 435 ; *Manning* v. *Carberry*, 172 Mass. 432 ; *Knight* v. *Overman Wheel Co.* 174 Mass. 455, 466. See also *Commonwealth* v. *Piper*, 120 Mass. 185, 187, and cases cited.

3. The remaining contentions made upon the defendant's brief relate to the question whether, even if the statutory signals were not given, the plaintiff ought to have been allowed to go to the jury upon the evidence.

The defendant requested a ruling that the evidence was insufficient to warrant a finding for the plaintiff, which was refused, and also a ruling that if the deceased went upon the crossing without looking or listening for the train and was struck he was guilty of gross negligence. The latter request was not given in terms, but the jury were instructed that if the plaintiff's intestate heard the whistle of the train and ran or walked towards the crossing for the purpose of seeing the train go by and got so near the train as to be struck he was guilty of gross negligence, and they were also instructed in these words.

" If the plaintiff's intestate, before arriving at the crossing heard or saw the defendant's train approaching and went upon the crossing to see the train go by and was struck by the defendant's train, he was guilty of gross negligence and cannot recover. That is to say, Suppose this boy, seeing the train, knew it was coming, hearing the whistle or not hearing the whistle, went down for the purpose of seeing the train go by, under those circumstances you see the railroad could not be held responsible, because it could not be said in that case that the failure of the railroad to blow the whistle or ring the bell, contributed toward that accident."

If, as the jury must have found, the required signals were not given, all that the plaintiff was required to prove further was

that the deceased was killed at the crossing by the train. The plaintiff need not show that the deceased was careful. If the defendant relies upon the gross negligence of the deceased that defence must be established by evidence. As the evidence stood no person saw the deceased struck or assumed to testify just how the accident happened. We think the question whether he was grossly negligent was for the jury. There was no direct evidence that he failed to look or listen for the train, and it cannot be said that upon the evidence there was no possible reasonable explanation of the accident save his gross or wilful negligence.

*Exceptions overruled.*