MARGARET SLATTERY, administratrix, *vs.* NEW YORK, NEW
HAVEN, AND HARTFORD RAILROAD COMPANY.
SAME *vs.* SAME.

Worcester.   October 5, 1909. — October 21, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Negligence*, Railroad, Causing death, Gross.   *Grade Crossing.*   *Evidence*, Presumptions and burden of proof.

A traveller upon a public way approaching a grade crossing of a railroad with the
way, which is supplied with gates to prevent persons from going upon the
crossing when trains are passing, has no right to rely exclusively on the fact
that the gates are not lowered or closed in determining whether he should go
upon the crossing, but is bound to use his own senses.

Where, at about forty minutes after six o'clock on a morning in mid-December
which was " kind of dark and foggy like," a workman approached upon a high-
way a grade crossing of eight railroad tracks and, finding a gate at the crossing
not lowered or closed, proceeded upon the crossing for about fifty-eight feet over
three tracks upon which were freight cars which obstructed his view of a train
approaching upon the fifth track, and then, through a space of twenty-five feet
at any point of which he had a view for at least five hundred feet up the track
on which the train was approaching, " walked along just as he would be going
to his work, not heeding anything . . . kind of looking straight ahead," was
struck by the train, and after conscious suffering died, the administrator of his
estate cannot recover at common law for his conscious suffering, or under St.
1907, c. 392, amending R. L. c. 111, § 267, and St. 1906, c. 463, Part I. § 63, for
his death, since as matter of law he was not in the exercise of due care.

At the trial of an action by an administrator against a railroad company under
St. 1906, c. 463, Part II. § 245, for the loss of the life of the plaintiff's intestate
to whose death it was alleged that a neglect of the defendant to ring the bell
on a train approaching a grade crossing of eight railroad tracks with a public
way contributed, it appeared that the plaintiff was struck by a train of the
defendant on the fifth track and that when he went upon the crossing the gate
was not lowered or closed, and the evidence on the question whether the bell
was rung was contained in the testimony of one witness for the plaintiff, who
in direct examination stated that he passed the gate as it was being lowered
across the way and was trying to catch up with the plaintiff's intestate, and tes-
tified, " I didn't notice any bell or sound from the train as it came along." In
cross-examination the same witness testified : " No, I am not much deaf, I think.
. . . I didn't notice whether the bell was ringing or not.  I didn't hear it.  I
would pay attention to it if I heard it, but I didn't hear it.  If it had rung I
would have heard it.  I wasn't paying attention to hear whether the bell was
ringing or not because I didn't hear it." *Held*, that, although the testimony of
the witness on cross-examination was conflicting, his statement on direct exam-
ination that he did not " notice any bell " made it under the circumstances a
question for the jury whether the bell was rung or not.

In an action by an administrator against a railroad company under St. 1906, c. 463, Part II. § 245, for the loss of the life of the plaintiff's intestate, to whose death there is evidence that a neglect of the defendant to ring the bell on a train approaching a grade crossing of the railroad with a public way contributed, the burden of proving the gross negligence on the part of the plaintiff's intestate, which, under the statute, would exempt the defendant from liability, is upon the defendant.

In an action by an administrator against a railroad company under St. 1906, c. 463, Part II. § 245, for the loss of the life of the plaintiff's intestate, to whose death it is alleged that a neglect of the defendant to ring the bell on a train approaching a grade crossing of eight railroad tracks with a public way contributed, the defendant relied in defense upon alleged gross negligence of the plaintiff's intestate, and the only evidence upon this question was that given by witnesses for the plaintiff, who testified that the plaintiff's intestate approached the crossing at about forty minutes after six o'clock on a morning in mid-December, which was "kind of dark and foggy like," that the gate was not lowered or closed, that there were freight cars obstructing the view of the approaching train on the first three tracks, that from the third to the fifth track was about twenty-five feet, throughout which distance there was a clear view for five hundred feet up the track on which the train was approaching, and through which distance the plaintiff's intestate "walked along just as he would be going to his work, not heeding anything . . . kind of looking straight ahead." From the evidence, the jury would have been warranted in finding that no bell was rung on the train and that another train which was passing might have distracted the attention of the plaintiff's intestate. As matter of law the plaintiff's intestate was not in the exercise of due care. Held, that it could not be said as matter of law that the defendant had sustained the burden of proving that he was guilty of gross negligence, and that the question whether the intestate was or was not guilty of gross negligence was for the jury.

Two ACTIONS OF TORT growing out of the death of one James A. Slattery at the crossing at grade of Plymouth Street in Worcester by eight railroad tracks; as stated in the opinion. Writs in the Superior Court dated December 19, 1907.

The cases were tried together before *Gaskill*, J. The facts are stated in the opinion. At the close of the evidence for the plaintiff, the presiding judge ordered verdicts for the defendant; and the plaintiff alleged exceptions, which, after the death of *Gaskill*, J., were allowed by *Lawton*, J.

*D. I. Walsh*, (*F. B. Spellman* with him,) for the plaintiff.

*A. J. Young*, for the defendant.

LORING, J. These are two actions of tort brought by the administratrix of the estate of one James A. Slattery, who was killed by one of the defendant's passenger trains on a highway crossing at grade in the city of Worcester. The first count in the first action is founded on St. 1907, c. 392, (amending R. L. c. 111, § 267, and St. 1906, c. 463, Part I. § 63,) which (*inter*

*alia*) makes a railroad liable to a fine in case the death of one in the exercise of due care is caused by the negligence of its agents or servants. The second count is founded on St. 1906, c. 463, Part II. § 245, (re-enacting R. L. c. 111, § 268,) which makes a railroad liable to a fine in case a person is killed at a crossing where the bell must be rung or the whistle sounded, and it appears that those signals were not given as required by law and that that neglect contributed to the accident, unless the defendant proves that the deceased was guilty of gross or wilful negligence.

The second action was brought for the conscious suffering of the intestate caused by the same accident.

An agreement was made as to the point from which the deceased had a view of the track in question. It was also agreed that " by order of the board of railroad commissioners issued under R. L. c. 111, § 189, as amended by Acts of 1906, c. 463, Part II. § 148, the defendant company was exempt from blowing the locomotive whistle as a signal at this crossing." On these two agreements and the plaintiff's evidence the presiding judge directed a verdict for the defendant in both actions. The cases are here on exceptions to those rulings.

The accident happened at about forty-two minutes after six o'clock on the morning of December 14, 1907.

The intestate came to the crossing in question on the northerly side of Plymouth Street, and was killed by an outbound passenger train on the fifth of the eight tracks which are laid across that street and which constitute the grade crossing in question. There are gates across the highway at each end of the crossing, operated by a crank situated on the west end of it. The intestate came to the crossing from the east. The evidence showed that the gates were up on the east side of the crossing when he passed them.

The nearest rail of the track here in question was eighty-four feet from the gate as a man walked on the north side of Plymouth Street and of the crossing. There was evidence that there were freight cars standing on the first three tracks, which wholly obstructed the view of a train on the track here in question, that is, the outward bound track. From the gate to the westerly rail of the third track was fifty-nine and five-tenths

feet. From there to the nearer rail of the track in question was twenty-four and one half feet. The parties "agreed that the distance from a point where Slattery had a clear view of five hundred feet in the direction from which the train was approaching to the nearer rail of the track on which the train that hit him came was twenty-five feet."

Only one witness testified to what Slattery did after he passed by the gates. He testified that "The freight was passing the New Haven road about at the time he passed when I was coming and they commenced to lower the gates. The gates had not been completely lowered at the time he was struck. They were just being lowered at the time I saw him struck. I saw the engine of the passenger train strike him. As he walked along beyond the gates and over the tracks there as he walked up to the time he was struck, he was walking along just as he would be going to his work, not heeding anything I thought. He had his dinner pail in his hand. He was kind of looking straight ahead. His face was pointing right straight ahead."

The intestate had no right to rely exclusively on the fact that the gates were up when he passed by them. He was bound to use his own senses to determine whether it was safe to go on. *Ellis* v. *Boston & Maine Railroad,* 169 Mass. 600, and cases there cited. *Santore* v. *New York Central & Hudson River Railroad, ante,* 437, and cases cited.

The only evidence introduced by the plaintiff shows that the intestate did not look. In addition it is apparent that he would have seen the train if he had looked. Under these circumstances the plaintiff failed in showing that the intestate was in the exercise of due care. *Hudson* v. *Lynn & Boston Railroad,* 185 Mass. 510. *Walsh* v. *Boston & Maine Railroad,* 171 Mass. 52. *Raymond* v. *New York, New Haven, & Hartford Railroad,* 182 Mass. 337. *Roberts* v. *New York, New Haven, & Hartford Railroad,* 175 Mass. 296. *Fitzgerald* v. *Boston Elevated Railway,* 194 Mass. 242. It follows that the verdicts were rightly ordered in the second action and on the first count in the first action.

We are however of opinion that there was error in ordering a verdict for the defendant on the second count of the first action.

Three witnesses testified as to the ringing of the bell. When two of them, Boyer and Nora Moriarty, came to the gates, they

were down. But the third, Cahill, who was trying to catch up with Slattery, passed the gates as they were being lowered, and kept on after Slattery. On his direct examination Cahill testified: "I didn't notice any bell or sound from the train as it came along." On his cross-examination he testified: "I didn't notice whether the bell was ringing or not. I didn't hear it. I would pay attention to it if I heard it, but I didn't hear it. If it had rung I would have heard it. I wasn't paying any attention to hear whether the bell was ringing or not because I didn't hear it." *

Whether testimony by a witness that he did not hear a bell ring is evidence that it did not ring depends upon the surrounding circumstances. "Ordinarily, all that a witness can say, in such a case, when called to prove that a bell was not rung, is that he did not hear it. Such a statement, with no accompanying facts, is merely negative, and of no value as evidence. But attending circumstances may be shown which make the statement strong affirmative evidence. It may appear that all the attention of which the witness was capable was concentrated on the effort to ascertain whether the bell was rung, and his failure to hear it could only have been because it made no sound. A witness may be in any conceivable attitude of attention or inattention, which will give his evidence value, or leave it with little or no weight; but where his position is such that the sound would have been likely to attract his attention if the bell had been rung, his failure to hear it is some evidence that there was no ringing." Knowlton, J., in *Menard* v. *Boston & Maine Railroad*, 150 Mass. 386, 387.

Cases like *Tully* v. *Fitchburg Railroad*, 134 Mass. 499, and *Livermore* v. *Fitchburg Railroad*, 163 Mass. 132, on the one hand, and those like *Lamoureux* v. *New York, New Haven, & Hartford Railroad*, 169 Mass. 338, *Walsh* v. *Boston & Maine Railroad*, 171 Mass. 52, and *McDonald* v. *New York Central & Hudson River Railroad*, 186 Mass. 474, on the other hand, do not reach the question which we have to decide. All that the witness testified to in *Tully* v. *Fitchburg Railroad*, 134 Mass. 499, was, "about the bell ringing I cannot say whether I heard

* He also testified in cross-examination, "No, I am not much deaf, I think."

it or not"; and the testimony given by the witness in *Livermore* v. *Fitchburg Railroad*, 163 Mass. 132, was similar. On the other hand in *Lamoureux* v. *New York, New Haven, & Hartford Railroad*, 169 Mass. 338, the witness testified: "What took my attention was the team came along and there was not any whistle or sound from the train, and I says to myself, 'That's funny.'" In *Walsh* v. *Boston & Maine Railroad*, 171 Mass. 52, a husband and wife stopped to see the train go by, and they both testified "that they heard the usual noise of an approaching train, but that they heard no whistle blown or bell rung before the train reached the crossing." The wife also testified that "her attention was concentrated on it [the train] all the time." In *Mc-Donald* v. *New York Central & Hudson River Railroad*, 186 Mass. 474, "two witnesses testified positively that the whistle was not blown nor the bell rung."

The remaining cases are *Menard* v. *Boston & Maine Railroad*, 150 Mass. 386, *Johanson* v. *Boston & Maine Railroad*, 153 Mass. 57, *Hubbard* v. *Boston & Albany Railroad*, 159 Mass. 320, and *Daniels* v. *New York, New Haven, & Hartford Railroad*, 183 Mass. 393. In *Menard* v. *Boston & Maine Railroad*, *Johanson* v. *Boston & Maine Railroad*, and *Daniels* v. *New York, New Haven, & Hartford Railroad*, testimony by witnesses that they did not hear the whistle or bell or one of them was held to be evidence that those signals were not given. In *Hubbard* v. *Boston & Albany Railroad*, it was held that it was not.

In *Hubbard* v. *Boston & Albany Railroad* one witness was engaged in "putting the boards down around the bottom of a hen-house" near the track, and the other was working for the first witness "on the hen-house fence." The court took the view that from their occupation there was affirmative evidence showing that they would not be likely to have heard the bell if it had rung.

It does not appear from the report of *Johanson* v. *Boston & Maine Railroad* who the witnesses were who testified that they did not hear the whistle or what they were doing. It appears from the original papers that the first witness was a brother of one of the boys killed, and was following them; and that the other was in a building adjoining the roadbed of the railroad and about five hundred feet away, and that he was looking from

a window toward Boston, the direction from which the train in question was coming.  In *Menard* v. *Boston & Maine Railroad,* some of the witnesses were driving in a carriage over the same crossing, directly ahead of the three persons who were killed; and in *Daniels* v. *New York, New Haven, & Hartford Railroad,* the statement put in evidence was the statement of the deceased. It was said by this court in *Menard* v. *Boston & Maine Railroad* that " three of them were riding at great risk to their lives, if they failed to notice such signals as they heard." p. 387.  There is nothing contrary to these cases in the recent case of *Hines* v. *Stanley Electric Manuf. Co., ante,* 288.

In the case at bar Cahill's testimony on his direct examination comes within *Menard* v. *Boston & Maine Railroad* and *Daniels* v. *New York, New Haven, & Hartford Railroad.*  He was crossing these same tracks after the gates had been lowered.  It was enough under those circumstances that he testified that he did not " notice " a bell.  There is nothing in his cross-examination which should obliterate what he said on direct.  See *Purple* v. *Greenfield,* 138 Mass. 1; *Cameron* v. *New England Telephone & Telegraph Co.* 182 Mass. 310.  His testimony on cross-examination was conflicting.  On all his testimony it was for the jury to say what he meant, and whether on his evidence the bell did or did not ring.  It follows that the ruling directing a verdict for the defendant must stand, if it is to stand, on the gross negligence of the plaintiff's intestate.

The burden of proving gross negligence on the part of the intestate was on the defendant.  *Copley* v. *New Haven & Northampton Co.* 136 Mass. 6.  *Walsh* v. *Boston & Maine Railroad,* 171 Mass. 52.  *McDonald* v. *New York Central & Hudson River Railroad,* 186 Mass. 474.  *Brusseau* v. *New York, New Haven, & Hartford Railroad,* 187 Mass. 84.  *Kenny* v. *Boston & Maine Railroad,* 188 Mass. 127.  *Kelsall* v. *New York, New Haven, & Hartford Railroad,* 196 Mass. 554.  There have been cases where it has been held on the plaintiff's own story that as matter of law he was guilty of gross negligence.  See *Debbins* v. *Old Colony Railroad,* 154 Mass. 402; *Emery* v. *Boston & Maine Railroad,* 173 Mass. 136.

But in our opinion the case at bar is not such a case.  By the testimony of every witness the gates were up when the deceased

passed by them, and the jury could find that no statutory signals were given. The first three tracks were blocked with cars which wholly obstructed Slattery's view of the approaching train until he came within twenty-five feet of it. The accident happened before the sun was up and there was testimony that on the morning in question " it was kind of dark and foggy like." We do not think that the case can be fairly distinguished from *Brusseau* v. *New York, New Haven, & Hartford Railroad,* 187 Mass. 84, see also *Kenny* v. *Boston & Maine Railroad,* 188 Mass. 127. In addition to that there is this statement in the bill of exceptions, as testified to by Cahill: " The freight was passing the New Haven road about at the time he passed when I was coming and they commenced to lower the gates." That would seem to warrant a finding that a freight train was passing in the opposite direction. If that be so, it was a further fact tending to distract Slattery's attention from the train which ran him down. We are of opinion that the question whether the deceased was or was not guilty of gross negligence was for the jury.

The result is that the exceptions must be overruled which were taken to the ruling directing verdicts for the defendant in the second action, and on the first count in the first action; and that the exception to the ruling directing a verdict for the defendant on the second count in the first action must be sustained.

*So ordered.*