ROUNTREE *v.* FARMERS COTTON OIL COMPANY.

4-7412                                    182 S. W. 2d 464

Opinion delivered October 9, 1944.

*Steel & Edwardes,* for appellant.

*Smith & Sanderson,* for appellee.

Knox, J. Appellant, a common carrier of freight by motor coach, accepted for shipment to appellee 2,350 pounds of "pressed cloth" to be transported from a point near Houston to Texarkana. Somewhere en route the goods caught fire and were damaged to such an extent that, according to appellee, they were wholly unfit for use. Unable to adjust their differences, appellee brought this action, alleging that the goods were "wholly lost to" appellee. During the trial appellee, over appellant's objection, was permitted to amend by alleging that the loss occurred on account of fire. The goods were not totally destroyed. It seems that pressed cloth is manufactured from human hair, and is used in hydraulic presses in extracting, under pressure, oil from cotton seed, and of necessity must be of correct width and length to fit the press. There is a thick woven edge along each side of the cloth. There is no dispute that in order for the cloth to be usable its edges must be intact.

In the instant case the cloth was not completely burned up, but the evidence is that the edges were so badly burned that the cloth was not usable. Convinced that there was no substantial evidence to the contrary, the trial court directed a verdict for appellee, and appellant relies mainly upon this action of the trial court to obtain a reversal. Appellant bases his claim of error in the instruction of the verdict upon three grounds, to-wit: He contends (1) that there was substantial conflict in the testimony of the witnesses; (2) that since the trial court permitted the jury to view the damaged cloth it could not thereafter direct a verdict; and (3) the court could not direct a verdict for unliquidated damages.

Three witnesses, with many years of experience in the operation of cotton oil mills, testified for appellee

that the cloth after injury by the fire was utterly useless, and had no value except for junk. Appellant's agent, one C. L. Clark, testified that he had measured the cloth and that it was still 12½ inches wide. Certain questions propounded to, and answers given by him, are quoted as follows: "Q. On this roll of press cloth (indicating) are all of the edges charred or seared so as to render it unserviceable? A. No, sir. On cross-examination: Q. You don't know whether this cloth can be used for the purpose for which it was purchased or not, do you? A. Not being a cotton oil mill man, I wouldn't say." Later Mr. Clark was recalled and testified that this was the first burned pressed cloth he had ever seen, and that he was not undertaking to testify that the edges of the cloth were not affected.

As we view it, Mr. Clark does not testify to the existence of any fact whatever. His testimony is so negative in character as to have no probative value whatever. The record here presented, therefore, is as if three witnesses had testified for appellee that the cloth was wholly destroyed, and that Mr. Clark, or no other witness, had testified otherwise.

Little need be said as to the verdict being for unliquidated damages. The evidence is undisputed that the value of 2,350 pounds of press cloth in an undamaged condition in Texarkana was $1,762.50, plus freight. It is true that after the fire it had a small junk value, but appellant at all times has had possession of the goods, so appellee is under no obligation to account to appellant for this junk value, since, having possession of the damaged goods, appellant is in a better position to obtain this junk value than appellee. The amount of damage was fixed and certain and the court properly directed a verdict for this undisputed value. In support of his argument on this point appellant relies, almost exclusively, upon the case of *Naperskie* v. *Trevillion*, 202 Ark. 638, 151 S. W. 2d 992. That case was one sounding *in tort,* while here the action is based upon an alleged breach of contract of carriage of goods—the bill of lading was introduced in evidence.

The main argument advanced by appellant for reversal is that, since the jury were permitted to view the damaged goods, the court could not thereafter direct a verdict. Appellant cites no authority in support of his argument. While there is conflict between the decisions of other jurisdictions, the weight of authority appears to be that the trial court may direct a verdict after inspection by the jury. *Kurrle* v. *City of Baltimore,* 77 Atl. 373, 133 Md. 63; *Tully* v. *Fitchburg R. Co.,* 134 Mass. 499; *Albright* v. *Sherer, et al.,* 223 Mass. 39, 11 N. E. 711.

The argument that the court should not direct a verdict after permitting a view by the jury is based upon the theory that all or some members of the jury might observe some fact or circumstance not proven by the testimony of other witnesses, which is in conflict with other evidence, and creates a disputed issue for the jury's determination. Nothing in the record here indicates that through this cursory examination any juror observed any fact or circumstance not discovered by those who had made a careful examination in order to properly qualify themselves to testify. If, as might be expected, such fact had come to the attention of those who were called as witnesses, it would have been preserved in their testimony, and if substantial, then the issue would have been for the jury's determination. Highly persuasive, if not controlling, in the determination of the question is the language of Mr. Justice Riddick in the case of *Fitzgerald* v. *La Porte,* 67 Ark. 263, 54 S. W. 342, where referring to a view by the jury he says: "The verdict must be supported by other evidence than a view, and a verdict depending upon a view alone could not be upheld." The oral evidence presented by the record here standing alone would require a directed verdict for appellee. Appellant contends, however, that the view by the jury changes the situation. If so, would we not have a "verdict upon a view alone?" We are of the opinion that the view by the jury did not deprive the trial court of the right to direct a verdict.

Appellant contended in the court below that human hair could not be the subject of commerce, and that ap-

pellee, therefore, could not recover for loss thereof. He also contended that the court erred in permitting appellee to amend to show that the alleged loss was "by fire." Counsel says because he was being inducted into the army he did not have time to brief these assignments of error, but states that he does not abandon them. Our own examination of the authorities has failed to disclose error with respect to the trial court's ruling on either question.

Finding no error, the judgment is affirmed.