WILLIAM G. EMERY, administrator, *vs.* BOSTON AND MAINE
RAILROAD.

Suffolk.   November 10, 1898. — March 18, 1899.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Loss of Life — Railroad — Gross Negligence — Law and Fact — Action.*

Where, in an action against a railroad corporation under Pub. Sts. c. 112, § 213, it
is shown that the injured person was guilty of " gross or wilful negligence "
which contributed to the injury, the case is rightly taken from the jury.

Two railroad tracks, one being the southerly used for inward and the other for
outward trains, crossed a highway at grade.  As an outward bound train ap-
proached in the evening, the crossing was guarded by a man who was swinging
a lantern, and the head-light on the engine was burning.  The distance between
a point southerly of the nearest rail of the inward track, beyond which there
was an unobstructed view towards the train for a mile, and the southerly rail of
the other track was twenty-eight feet.  A person who was familiar with the
locality approached the railroad from the south, crossed the inward track, walk-
ing at a very moderate rate, with his shoulders slightly stooped, stepped upon
the outward track, and then, seeing the train, tried to step back, but was struck
by the engine and killed.  *Held,* in an action against the corporation under Pub.
Sts. c. 112, §§ 212, 213, for causing his death, that, as matter of law, he was
guilty of gross negligence which contributed to the injury; and that the action
could not be maintained under either section.

TORT, by the administrator of the estate of William J. Stacy,
to recover damages for the death of the plaintiff's intestate at
the grade crossing of the railroad of the defendant over Holland
Street in West Somerville.  The declaration contained two
counts, the first under the Pub. Sts. c. 112, § 212, and the second
under § 213 of the same chapter.  Trial in the Superior Court,
before *Maynard*, J., who, at the close of the evidence for the
plaintiff, ruled that the action could not be maintained on
either count; and directed the jury to return a verdict for the
defendant.  The plaintiff alleged exceptions, which appear in
the opinion.

*A. H. Russell & R. S. Bartlett*, for the plaintiff.

*W. I. Badger & H. W. Ogden*, for the defendant.

LATHROP, J.   The accident in this case occurred on May 7,
1895, at about half past eight o'clock in the evening.   The

defendant company at the place of the accident maintained two tracks, one used for inward and the other for outward trains, the southerly one being used for inward trains. From Holland Street, both of the tracks extended towards the east in a straight line for about a mile, so that one standing on the sidewalk on Holland Street fifteen feet south of the inbound track had a clear and unobstructed view to the eastward along both of the tracks for practically a mile. The view on some portions of the sidewalk on Holland Street up to the point fifteen feet south of the inbound track was obstructed by buildings.

The plaintiff's intestate lived on the northerly side of the crossing, but on the evening in question he had been attending a meeting at a building about two hundred and eighty feet southerly of the crossing ; and he was on his way home when the accident occurred. He went along Holland Street, crossed the inward track, and was upon the outward track when he was struck and killed by the locomotive engine of an outward bound freight train.

At the time of the accident there were no gates at the crossing, but it was guarded by a man on the north side of the crossing, who was swinging a lantern as the freight train approached. There had been gates at the crossing on each side of the road-bed, which, with gates at another crossing, one hundred and forty feet easterly of Holland Street, were operated by a man stationed about midway between the two streets. In consequence of a petition presented to the board of aldermen of Somerville for better security at these crossings, the defendant agreed to change the method of operating the gates ; and, in pursuance of this agreement, two or three days before the accident, the gates were removed from the crossing at Holland Street, and from that time down to and including the time of the accident the crossing was guarded by a man using a flag by day and a lantern by night. The iron work of the gates was in position at the time of the accident, but the gates were not in place.

The plaintiff had lived in Somerville for a number of years, and was familiar with the crossing and its surroundings as they were before the gates were removed. He did business in Boston, and from where he lived it was necessary for him, in order to get to the post-office or to Boston, either over the railroad or on

the electric cars, to pass over the crossing where the accident occurred.

The head-light on the locomotive engine was burning at the time of the accident. The evidence for the plaintiff on the question whether or not the bell was ringing when the train approached is rather indefinite, but we incline to the opinion, and shall assume for the purposes of the case, that there was some evidence for the jury that the bell did not ring as the train approached the crossing.

As to the conduct of the intestate just before the accident, there is evidence from two witnesses. One, who was on the other side of the crossing, testified that he saw the intestate just as he stepped on the outer track, and that he tried to jump back. The other witness, a woman, who was coming down the inward track from the west, testified that she saw him cross the first track; that she expected to see him stop, but he kept on; that "he stepped in front of the train. It was a few feet from him, and he stepped in the middle of the track. Just then the train whistled, and he looked up quick and took a step back; and he was too late." She further testified that the intestate was walking at a very moderate rate, with his shoulders slightly stooped. It also appeared that the distance between the point fifteen feet southerly of the nearest rail of the inward bound track and the southerly rail of the outward bound track was at least twenty-eight feet. It therefore appears that, if the intestate had at any time looked up, he could not have failed to see the approaching train, as there was no obstruction in the way for the distance of a mile.

On this evidence it is clear that the intestate was not "in the exercise of due diligence," which is required by § 212, and cannot maintain an action on the first count. *Tyler* v. *Old Colony Railroad*, 157 Mass. 336, and cases cited. *Livermore* v. *Fitchburg Railroad*, 163 Mass. 132. *Sprow* v. *Boston & Albany Railroad*, 163 Mass. 330.

The principal difficulty in the case arises under the second count. Section 213 requires it to be "shown" that, in addition to a mere want of ordinary care, the person injured "was at the time of the collision guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross or wilful negligence or unlawful act contributed to the injury."

While cases under this section have been frequently submitted to the jury, we suppose no one would doubt that, if it was shown by the testimony in behalf of the plaintiff that the person injured was acting in violation of law, it would be the duty of the court to take the case away from the jury ; and we see no reason why the same rule should not apply where the question is whether gross or wilful negligence is shown. Gross or wilful negligence is more than mere negligence, as these words are used in the statute ; but the distinction between them is one of degree. Where the question is whether a given condition of things amounts to negligence, this court in numerous cases has asserted its right to say that negligence existed, and that therefore the plaintiff could not recover. The same must be true as to negligence in a higher degree ; and so it was decided in *Debbins* v. *Old Colony Railroad,* 154 Mass. 402, under the statute which is now before us. So, it is said by Mr. Justice Barker in *Sullivan* v. *New York, New Haven, & Hartford Railroad,* 154 Mass. 524: " She was familiar with the crossing and its attendant dangers. If, as might be found from the evidence, she attempted in such circumstances to cross in full view of a rapidly approaching train, without looking to see whether or not danger was imminent, her negligence would be properly characterized as gross."

The statute clearly contemplates that a person who is injured or killed at a crossing of a highway at grade may be guilty of gross negligence, even though the whistle of the locomotive was not sounded or the bell rung as prescribed in the Pub. Sts. c. 112, § 163 ; and in the case of *Debbins* v. *Old Colony Railroad, ubi supra,* the locomotive engine had no head-light, and the bell was not rung, yet the plaintiff was held guilty of gross negligence and was not allowed to recover.

In the case at bar there was no invitation to cross, as in *Bayley* v. *Eastern Railroad,* 125 Mass. 62, *Doyle* v. *Boston & Albany Railroad,* 145 Mass. 386, *Johanson* v. *Boston & Maine Railroad,* 153 Mass. 57, and *Clark* v. *Boston & Maine Railroad,* 164 Mass. 434. On the other hand, the guard at the crossing was swinging a lantern, giving warning of danger.

Nor can it be said that the intestate, while in a place of safety, was frightened by the unexpected approach of the train, and attempted to cross the track, as in *Copley* v. *New Haven & North-*

*ampton Co.* 136 Mass. 6. When he first saw there was danger, he was on the track of the approaching train, and then attempted to step back, but it was too late.

We find nothing in the attendant circumstances which prevents us from saying, as matter of law, that the intestate was guilty of gross negligence which contributed to his injury.

*Exceptions overruled.*