MARY BRUSSEAU, administratrix, *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Bristol. October 24, 1904. — November 23, 1904.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Railroad. Negligence,* Gross negligence.

In an action against a railroad company under R. L. c. 111, § 268, for the loss of life of the plaintiff's intestate at a grade crossing of a highway, alleged to have been caused by the defendant's failure to give the signals required by § 188 of the same chapter, there was evidence, that the plaintiff's intestate, being awake and sober, was driving a quiet horse late at night in a covered wagon carrying bottles which rattled, that when near the crossing he shouted "whoa" to his horse, that there was no bell or whistle to warn him, that his view of the track was obstructed by freight cars, that it was somewhat foggy, that the gates seemingly intended to warn travellers of approaching trains were up, and that while thus crossing the track a train of the defendant decapitated his horse, broke his wagon and instantly killed him. *Held,* that the case properly was submitted to the jury on the questions, whether the signals required by law were given, whether their absence contributed to the collision, and whether the defendant had proved gross negligence on the part of the plaintiff's intestate.

TORT, under R. L. c. 111, § 268, for the loss of life of the plaintiff's intestate at a grade crossing of the defendant's railroad on Sawyer Street in New Bedford, alleged to have been caused

by the defendant's failure to give the signals required by § 188 of the same chapter, a train of the defendant having decapitated the horse of the plaintiff's intestate, broken his wagon and instantly killed the intestate, while he was attempting to drive over the crossing in a covered express wagon at 1.15 A. M. on Sunday, May 18, 1902. Writ dated June 21, 1902.

At the trial in the Superior Court *Holmes*, J. refused to rule that upon all the evidence the plaintiff could not recover, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $3,500. The judge reported the case for determination by this court. If the ruling of the judge was right, judgment was to be entered on the verdict; otherwise, judgment was to be entered for the defendant.

*F. S. Hall*, for the defendant.

*J. W. Cummings*, (*E. Higginson* with him,) for the plaintiff.

HAMMOND, J. The evidence as to whether the signals required by the statute were given was conflicting, but it cannot be said as matter of law that it did not justify the jury in finding for the plaintiff on that issue. See *Dalton v. New York, New Haven, & Hartford Railroad*, 184 Mass. 344, and cases cited; also *McDonald v. New York Central & Hudson River Railroad*, 186 Mass. 474. If the signals were not sounded, the jury under the circumstances might infer that the absence of them contributed to the injury. *Doyle v. Boston & Albany Railroad*, 145 Mass. 386.

The burden was upon the defendant to prove that the plaintiff's intestate was grossly negligent, *McDonald v. New York Central & Hudson River Railroad, ubi supra*, and it is vigorously contended that as matter of law the evidence shows that he was. Although there are cases in which it has been adjudicated as matter of law that under the circumstances gross negligence was proved, (*Debbins v. Old Colony Railroad*, 154 Mass. 402, *Emery v. Boston & Maine Railroad*, 173 Mass. 136,) still, speaking generally, the question whether a particular fact is proved by oral testimony depends largely upon the view taken by the jury as to the credibility of the witnesses, and hence it is comparatively seldom that, in the absence of binding admissions or agreements as to facts, a ruling that as matter of law a material fact has been proved can be given. The evidence in this

case tended to show that the plaintiff's intestate was sober, was driving a quiet and gentle horse, at a moderate speed; that in his wagon there were bottles which rattled; that when near the crossing he shouted "whoa" to his horse; that the wagon cover extended over the whole side of the wagon; that there was no bell or whistle to warn him; that for some few minutes before reaching the crossing he had been travelling on a street parallel with and near to the railroad location; that as he turned into Sawyer Street and approached the crossing his view of the track upon which the train was coming was obstructed by freight cars standing near Sawyer Street; that the gates seemingly intended to warn travellers of approaching trains were up, and that the night was somewhat foggy. The evidence tended further to show that he was awake and guiding his horse. It was not shown that he observed the absence of the gateman, or that he knew that none was usually kept there at night, or that he was not listening for the train. It was near midnight, and from the absence of the signals and the fact that the gates were not lowered he had some reason to believe that no train was approaching, and that it was safe to cross. His ability to hear may have been affected by the rattling of the bottles and by the noise of the team. It is true that the evidence was conflicting as to many of the circumstances above named, especially with reference to the giving of the signals required by statute, and a verdict for the defendant reasonably might have been expected; but without rehearsing the evidence further in detail, it is plain that the question whether the plaintiff's intestate was guilty of gross negligence was not a question of law for the court but of fact for the jury, and that the case was rightly submitted to them.

*Judgment on the verdict.*