MARY L. LAFOND, administratrix, *vs.* BOSTON AND MAINE
RAILROAD.

Middlesex.     March 7, 1911. — April 3, 1911.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Railroad,* Liability for injury or death at grade crossing. *Negligence,* Gross. *Evidence,* Presumptions and burden of proof, Relevancy and materiality.

In an action by an administrator against a railroad corporation under St. 1906, c. 463, Part II. § 245, for the loss of life of the plaintiff's intestate at a grade crossing of a highway, caused by the neglect of the defendant to give the signals required by § 147 of the same chapter, if it appears that the signals were not given and that the failure to give them contributed to the happening of the accident, the plaintiff is entitled to recover, unless the defendant sustains the burden of showing that the intestate, in addition to a mere want of ordinary care, was guilty of gross or wilful negligence or a violation of law which contributed to the injury.

It is seldom that a presiding judge can rule as matter of law that a material fact has been proved affirmatively, and, in an action by an administrator against a railroad corporation under St. 1906, c. 463, Part II. § 245, for the loss of life of the plaintiff's intestate at a grade crossing of a highway, caused by the neglect of the defendant to give the signals required by § 147 of the same chapter, facts on which the jury could find that the intestate was guilty of gross negligence do not for that reason justify the presiding judge in ruling that the defendant as matter of law has proved gross negligence of the intestate.

In an action by an administrator against a railroad corporation under St. 1906, c. 463, Part II. § 245, for the loss of life of the plaintiff's intestate at a grade crossing of a highway, caused by neglect of the defendant to give the signals required by § 147 of the same chapter, there was evidence that the signals were not given and that the failure to give them contributed to the happening of the accident. It appeared that the intestate, who was a little deaf, had alighted from a local train of the defendant at a station of the defendant, near which he lived, and that, passing behind the train from which he had alighted, he proceeded to cross the parallel tracks at the crossing on his way home, walking in the line of the sidewalk which was intercepted by the crossing, when he was struck and killed by an inbound express train on the third track. The gates were down, but the intestate was inside of them and it was not shown that he was aware of their position. There was evidence that, if he did know it, he had reason to suppose that the gates were kept closed merely because the rear of the train from which he had alighted extended over a part of the plank walk in the line of the sidewalk. There also was evidence on which the jury could have found, that there was an established practice of the defendant not to have an express train go past the station while a local train was discharging passengers, and that the intestate from his familiarity with the locality knew of this practice. It also could have been found that before stepping on the track the intestate had passed a gateman, who was just outside the gates, and had received no warning or intimation of danger. It did not appear that the intestate then saw the express train approaching. It appeared that when the intestate was about to step

on the track of the express train his attention was attracted by shouts from the gateman and the bystanders, that he then turned around and started back, but became confused, turned again and walked toward the express train and was struck and killed. It might have been found that, but for his pausing and turning around and his bewilderment and confusion caused by the shouts, the intestate would have crossed in safety. *Held*, that it could not be ruled as matter of law that the defendant had shown that the plaintiff's intestate was guilty of gross negligence, and that the case was for the jury.

In an action against a railroad corporation under St. 1906, c. 463, Part II. § 245, for the loss of life of the plaintiff's intestate at a grade crossing of a highway, caused by neglect of the defendant to give the signals required by § 147 of the same chapter, if it appears that the intestate had alighted from a local train of the defendant at a station of the defendant, near which he lived, and that he proceeded to cross the parallel tracks at the station on his way home, when he was struck and killed by an inbound express train on the third track, and the defendant contends that the plaintiff cannot recover because it is shown that his intestate was' guilty of gross negligence, evidence, that there was an established practice of the defendant, of which the intestate from his long familiarity with the locality might have been found to have had knowledge, that no express train should go past the station while a local train was discharging passengers there, is admissible as tending to show the absence of gross negligence on the part of the intestate.

TORT brought by the administratrix of the estate of Joseph I. LaFond, late of Cambridge, for the death of her husband, the intestate, who was instantly killed by a train of the defendant at the railroad station of the defendant in that part of Cambridge called West Cambridge on October 9, 1909. Writ dated November 13, 1909.

The first and second counts of the declaration were under St. 1907, c. 392. Afterwards, by amendment, the plaintiff added a third count under St. 1906, c. 463, Part II. § 245, alleging neglect in approaching the grade crossing to give the signals required by § 147 of the same chapter. The section thus declared upon is as follows: "If a person is injured in his person or property by collision with the engines or cars of a railroad corporation at a crossing such as is described in section one hundred and forty-seven, and it appears that the corporation neglected to give the signals required by said section, and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision, or to a fine recoverable by indictment as provided in section sixty-three of Part I. or, if the life of a person so injured is lost, to damages recoverable in an action of tort, as provided in said section, unless it is shown that, in addition to a mere want of ordinary care, the person injured or

the person who had charge of his person or property was, at the time of the collision, guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross or wilful negligence or unlawful act contributed to the injury."

In the Superior Court the case was tried before *Fox*, J. There was evidence tending to show the following facts:

LaFond had lived near the West Cambridge station for about twenty years. He had worked in Boston during that time and had gone into Boston and had come out from Boston every day by way of the West Cambridge station. He was a little deaf. Sometimes a person speaking to him would have to speak more than once. At other times he would hear what was said at once. On the night of the accident he took a train leaving the North Union Station at Boston at twenty minutes past seven in the evening. This train was due to arrive at West Cambridge at 7.34 P. M. and it arrived there at about that time. LaFond was in the smoker, which was next to the engine, and there were three passenger coaches following the smoker. When the train reached the West Cambridge station, LaFond got off on the right hand side and walked back alongside the train until he reached the rear end of the last car. He walked around the end of this car and across the track on which the train was standing, across another track and up to or on to the third track. The train on which he came out was the "Outward Local." He crossed the "Outward Local" track in the rear of the train which he had left, walking about in line with the sidewalk. He also crossed the track of the "Outward Express," still in line with the sidewalk, and had come up to or on to the third track, which was that of the "Inward Express."

The local train, on which LaFond was a passenger, stopped so that the rear end of it projected over the sidewalk line from three to four feet. Both gates were lowered before the local train passed across the street, and remained down at the time LaFond was struck. There was no gate and no obstruction of any kind between the main gate and the side of the car. There was a space there of a little over five feet, through which LaFond walked before turning to his right to cross the track. There was no evidence that he saw the position of the gates or knew that they were lowered.

The train which struck and killed LaFond was coming in the opposite direction on the "Inward Express" track. It was going at a rate of thirty-five or forty miles an hour. There was evidence from which the jury would have been warranted in finding that the bell on the engine of the express train was not rung and that the whistle was not sounded as required by St. 1906, c. 463, Part II. § 147, and that the failure to do this contributed to the killing of the intestate.

The gateman employed by the defendant at this crossing was standing near the handles of the gate and just outside the gate, talking with one Thompson and one Vanasse when LaFond walked by them. The gateman gave no signal or warning to LaFond that a train was approaching until LaFond was out as far as the "Outward Express" track, or between that track and the "Inward Express" track, when the gateman and several others began "hollering to him." At about that time Thompson ran out between the outward and inward express tracks, seeking to grab hold of LaFond and get him out of danger. When the "hollering" began LaFond turned around and started back, and, apparently confused as to the track on which the train was, turned around again and started toward the track on which the express train was coming. It appeared that two other passengers besides LaFond started to walk across the tracks and were stopped on the outward express track by the "hollering."

Apart from the gong in the gateman's shanty, which announced the approach of the express train and which indicated nothing to persons unfamiliar with the crossing, none of the witnesses were aware of the approach of the express train until the "hollering" began. At that time the express train was about opposite the station, eighty or one hundred feet from the crossing.

The local train on which LaFond had come from Boston had not started at the time he passed behind the rear end of it, but it did start at just about that time, and it had gone along far enough to enable the witnesses standing on the crossing near the gateman to see LaFond while he was between the inward and outward express tracks, and at the same time see the express train opposite the West Cambridge station seventy-five or eighty feet away. There was no evidence as to whether or not LaFond looked toward the west as he passed back of the local train.

The evidence was that while he was at a point either between the express tracks, or on the outward express track, his attention was attracted by the " hollering "; that he then turned around and started back, apparently going to escape being hit by the train, when he became confused, turned again and walked toward the express train and was struck either by the cylinder head or by the step. He was turning at the instant he was struck and was facing toward Boston.

The practice with reference to raising and lowering the gates at that time was to lower the gates before a train reached the crossing and to keep them down so long as any portion of the train extended over the street or any part of the planking.

There was in evidence a rule of the defendant requiring trainmen to use caution in passing a train receiving or discharging passengers at a station. There also was evidence tending to show that it had been the practice for many years not to drive a train past this station without stopping while another train was receiving or delivering passengers, and that before and up to June, 1909, the rules of the defendant required all trains to stop.

The following rule of the defendant, which was in force at the time of the accident, was offered and admitted in evidence, subject to the exception of the defendant:

" D-153 (Double track). Trains must use caution in passing a train receiving or discharging passengers at a station and must not pass between it and the platform at which the passengers are being received or discharged." The plaintiff offered in evidence the following rule in force before and up to June, 1909, and not afterward: " Great care must be used by the enginemen and trainmen of a train approaching a station where a train is receiving or discharging passengers, and in no case draw up to or pass a station where a train is standing, taking or leaving passengers. Station agents will immediately report to the superintendent any violation of this rule."

The plaintiff also offered in evidence the following rule for enginemen and firemen which was in force before and up to June, 1909, and not afterwards: " Approach stations carefully to avoid any risk of accident and in no case draw up to or pass a station where a train is taking or leaving passengers."

The judge excluded the rules, and the plaintiff excepted.

At the close of the plaintiff's evidence, the defendant asked the judge to order a verdict for the defendant on the ground that there was not sufficient evidence to warrant a verdict for the plaintiff. The judge thereupon ordered a verdict for the defendant, subject to the plaintiff's exception, and by agreement of the parties reported the case to this court for determination. It was agreed that all evidence admitted or excluded subject to exception might be considered by this court so far as it was competent. If the ruling of the judge ordering a verdict for the defendant was right, judgment was to be entered for the defendant. If his ruling was wrong and the case should have been submitted to the jury, judgment was to be entered for the plaintiff in the sum of $2,000.

*F. E. Bradbury*, for the plaintiff.

*F. N. Wier*, (*L. T. Trull* with him,) for the defendant.

SHELDON, J. The defendant admits that there was evidence which would have justified a finding that the bell was not rung and the whistle was not sounded upon the engine of the train which struck and killed the plaintiff's intestate. St. 1906, c. 463, Part II. §§ 147, 245. The jury could have found that the failure to give these signals contributed to the happening of the accident, even though the intestate was somewhat deaf. *Doyle v. Boston & Albany Railroad*, 145 Mass. 386. *Walsh v. Boston & Maine Railroad*, 171 Mass. 52, 58. *Brusseau v. New York, New Haven, & Hartford Railroad*, 187 Mass. 84. Upon these findings the plaintiff would be entitled to recover, unless the defendant sustained the burden of showing that the intestate, in addition to a mere want of ordinary care, was guilty of gross or wilful negligence which contributed to his injury, there being no contention that he was acting in violation of the law. *Manley v. Boston & Maine Railroad*, 159 Mass. 493. *Walsh v. Boston & Maine Railroad*, 171 Mass. 52. *Phelps v. New England Railroad*, 172 Mass. 98. *McDonald v. New York Central & Hudson River Railroad*, 186 Mass. 474.

As has been pointed out by this court, it is not often, in the absence of binding admissions or agreements as to facts, that a court can rule as matter of law that a material fact has been affirmatively proved. *Kelsall v. New York, New Haven, & Hartford Railroad*, 196 Mass. 554. *Kenny v. Boston & Maine Rail-*

*road,* 188 Mass. 127. *Brusseau* v. *New York, New Haven, &
Hartford Railroad,* 187 Mass. 84. In the first of these cases
this rule was declared, and it was shown that the decisions in
*Debbins* v. *Old Colony Railroad,* 154 Mass. 402, and *Emery* v.
*Boston & Maine Railroad,* 173 Mass. 136, cannot be regarded as
at variance with it. See also *Slattery* v. *New York, New Haven,
& Hartford Railroad,* 203 Mass. 453.

In the case at bar, as in others of the cases cited, the jury no
doubt could have found that the intestate was guilty of gross
negligence; but we cannot say that this was made out as matter
of law. It is true that the gates were down when he started to
cross the tracks, but the line of his approach was inside that of
the gates, and it was not shown that he was aware of their posi-
tion. If he did know it, he might have supposed that the gates
were closed merely on account of the arrival of the train which
he had just left, and were kept closed until that train should
have departed, as the gateman testified would be done when a
train extended (as this one did) over a part of the plank walk.
The jury could have found also that there was an established
practice on the part of the defendant not to have an express
train go past the station while a local train was discharging
passengers, and that the intestate from his long familiarity with
the locality knew of this practice. This evidence was excepted
to by the defendant; but it was competent, not only as to the
defendant's negligence, but also upon the issue of his care.
*Floytrup* v. *Boston & Maine Railroad,* 163 Mass. 152. The jury
might have found the custom to have been a practical construc-
tion of the defendant's rule which was in evidence, on which the
intestate had a right to rely. *Santore* v. *New York Central &
Hudson River Railroad,* 203 Mass. 437, 444. That differentiates
the case at bar from *Connolly* v. *New York & New England
Railroad,* 158 Mass. 8. The fact which also could be found
that he had passed by the gateman, who was just outside the
gate, before stepping upon the track without then receiving any
warning or intimation of danger had, in connection with the
other evidence, a bearing upon the issue of his gross negligence.
It did not appear that he then saw the express train approaching,
and the circumstances which we have mentioned might have
influenced his conduct. Even if he had seen it, he might, per-

haps not without negligence but still without a necessary inference of gross negligence, have formed a judgment that he could safely cross before it should have reached him. Indeed, it might have been found that but for the pausing and turning around more than once and the bewilderment and confusion caused by the well intended shouts of the bystanders and the gateman, he would have crossed in safety. It is not shown that he was guilty of gross negligence in starting to cross the track.

Nor can we say that his conduct in pausing, turning around and then continuing his attempt to cross is conclusive against him. In the immediate exigency and the distraction caused by the shouts behind him and the dazzling light of the locomotive and the roar of the train, it cannot be said as matter of law that either an instinctive movement forward or a sudden determination to go on was conclusive evidence of gross negligence. *Copley* v. *New Haven & Northampton Co.* 136 Mass. 6. *Sullivan* v. *New York, New Haven, & Hartford Railroad*, 154 Mass. 524, 528. *Manley* v. *Boston & Maine Railroad*, 159 Mass. 493. *Walsh* v. *Boston & Maine Railroad*, 171 Mass. 52. *Phelps* v. *New England Railroad*, 172 Mass. 98. *McDonald* v. *New York Central & Hudson River Railroad*, 186 Mass. 474.

We need not consider whether the plaintiff made out any case under the other counts of her declaration. Under the terms of the report, judgment must be entered in her favor upon the third count for the sum of $2,000.

*So ordered.*