BOSTON & M. R. R. v. RAFALKO.

(Circuit Court of Appeals, First Circuit. December 27, 1916.)

No. 1069.

1. RAILROADS ⚌313—CROSSING ACCIDENTS—LIABILITY—TRESPASSERS.
St. Mass. 1906, c. 463, pt. 2, § 245, provides that if a person is injured by collision with an engine or cars at a railroad crossing, and if it appears that the railroad corporation neglected to give statutory signals, and that such neglect contributed to the injury, the corporation shall be liable for damages, unless it is shown that, in addition to a mere want of ordinary care, the person injured was at the time of the collision guilty of gross or willful negligence, or acting in violation of law, and that such gross or willful negligence or unlawful act contributed to the injury. *Held* that, while gates lowered across a street at a crossing might have been a warning of danger, and while a pedestrian who disregarded such warning may not have been on the crossing by the railroad company's invitation or with its consent, the mere absence of such invitation or consent did not make her a trespasser and deprive her of the protection of the statute.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1002; Dec. Dig. ⚌313.]

2. RAILROADS ⚌313—CROSSING ACCIDENTS—ACTIONS—INSTRUCTIONS—TRESPASSER.
If such pedestrian was a trespasser in any sense, she was not one in the ordinary sense, and in an action for injuries the refusal to rule that she was a trespasser on the railroad was not error.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1002; Dec. Dig. ⚌313.]

3. RAILROADS ⚌313—CROSSING ACCIDENTS—DISREGARDING LOWERED GATES.
A highway traveler, going on a railroad crossing while the crossing gates are lowered, does not do so at her own risk, if any warning required from approaching trains is omitted.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1002; Dec. Dig. ⚌313.]

4. RAILROADS ⚌312—CROSSING ACCIDENTS—NECESSITY OF SIGNALS.
Under St. Mass. 1906, c. 463, pt. 2, § 147, requiring a bell to be placed on each railroad engine and rung when approaching or crossing highways, such signals must be given, whether a crossing is protected by gates or not.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 998–1001, 1003–1005; Dec. Dig. ⚌312.]

5. RAILROADS ⚌347—CROSSING ACCIDENTS—ACTIONS—EVIDENCE.
In an action for injuries to a person who started across a railroad while the crossing gates were down, behind a train which had been standing at the crossing discharging passengers and was starting to pull out, the fireman of an inbound train, by which she was struck, testified that people were always crossing the tracks at that place when there was a train in the depot, that it was the custom for his train to slow down or hold up, and not cross the crossing until the other train had gone by, that he could not say that they were not supposed to go upon the crossing, but that they were not supposed to go into the depot until the other train got off the crossing. *Held*, that such evidence was competent.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1124–1137; Dec. Dig. ⚌347.]

⚌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. RAILROADS ⊂⇒350—CROSSING ACCIDENTS—ACTIONS—INSTRUCTIONS.**

In view of such evidence, a requested instruction that there was no evidence that plaintiff was inside the crossing gates by invitation of the railroad company was properly refused.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. ⊂⇒350.]

**7. RAILROADS ⊂⇒350—CROSSING ACCIDENTS—DISREGARDING LOWERED GATES.**

While the attempt of a traveler to cross a railroad in disregard of the warning of danger afforded by lowered gates may well go far to prove the gross or willful negligence contributing to the injury, which will defeat a recovery for a failure to give crossing signals under St. Mass. 1906, c. 463, pt. 2, § 245, it does not as a matter of law prevent a recovery for an injury to which the failure to give the crossing signals has contributed.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. ⊂⇒350.]

**8. RAILROADS ⊂⇒350—CROSSING ACCIDENTS—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.**

As a pedestrian on a highway approached a railroad crossing, the gates were down, and an outbound train, the engine of which stood on the crossing, was discharging passengers. As it moved by, she started to cross behind it and was struck by an inbound train. While crossing the track she was at all times within the limits of the street. There was evidence that there were always people crossing the tracks when trains were discharging passengers, and that the inbound train had been accustomed to slow down or stop before crossing the street until the outbound train had gone by; that plaintiff was familiar with the crossing and had seen all this happen, and never expected a train from the direction from which the inbound train approached; that she listened for other trains, but heard nothing, and did not see the inbound train until the outbound train had passed her; that she then saw its light, but thought it had stopped, and started to move more quickly; and that the engine of the inbound train was emitting a very thick, stifling cloud of smoke, and did not give the required crossing signals. *Held* that, in an action for injuries under St. Mass. 1906, c. 463, pt. 2, § 245, the case was properly submitted to the jury, as the jury might have found plaintiff excusable for believing that the gates were down only because of the outbound train, and in attempting to cross as she had seen others do, and in believing that she could cross safely, and that the light she saw came from a train which had stopped, and, even though they found her negligent, they would not have been bound to find her negligence gross or willful.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. ⊂⇒350.]

**9. RAILROADS ⊂⇒348—CROSSING ACCIDENTS—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.**

To justify a ruling in an action for injuries sustained at a railroad crossing that the railroad company has sustained the burden of proving gross or willful negligence of the person injured, it is not sufficient that the evidence would warrant a finding that such negligence contributed to the injury, but the evidence must be such as to leave no other reasonable explanation of the accident possible.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1138–1150; Dec. Dig. ⊂⇒348.]

**10. TRIAL ⊂⇒253—INSTRUCTIONS—SINGLING OUT TESTIMONY.**

In an action for injuries sustained at a crossing, for which it was claimed the statutory signals were not given, defendant requested no ruling that there was no evidence of neglect to give the required signal, and the question whether defendant's negligence had contributed to the injuries was submitted to the jury under proper instructions. Defend-

---

ant requested a ruling that, if the train was running at a rate of 20 to 25 miles an hour, this was not evidence of negligence as between plaintiff and defendant. It appeared that plaintiff started to cross the track while the crossing gates were down. *Held*, that the refusal of the requested ruling was not error, as the ruling related only to one feature of the evidence which the jury were to consider.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. &approx;253.]

Putnam, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Massachusetts; Jas. M. Morton, Judge.

Action by Eva Rafalko against the Boston & Maine Railroad. Judgment for plaintiff, and defendant brings error. Affirmed.

Archibald R. Tisdale, of Boston, Mass., for plaintiff in error.

George L. Mayberry, of Boston, Mass. (Arthur F. Whalen and Mansfield & Whalen, all of Boston, Mass.; on the brief), for defendant in error.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

DODGE, Circuit Judge. The defendant in error (hereinafter called plaintiff) recovered judgment against the plaintiff in error (hereinafter called defendant), under chapter 463, § 245, of the Massachusetts Acts of 1906, for personal injuries sustained on January 1, 1913, at the crossing by the defendant's tracks over Wyoming avenue, in Melrose. The defendant seeks here to reverse the judgment, because of the refusal of the court at the trial to direct a verdict in its favor or to instruct the jury in accordance with its requests.

The section of the Massachusetts statute under which the plaintiff's suit was brought provides as follows:

"If a person is injured in his person or property by collision with the engines or cars of a railroad corporation at a crossing such as is described in section 147, and it appears that the corporation neglected to give the signals required by said section, and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision * * * unless it is shown that, in addition to a mere want of ordinary care, the person injured * * * was, at the time of the collision, guilty of gross or willful negligence, or was acting in violation of the law, and that such gross or willful negligence or unlawful act contributed to the injury."

The crossing referred to was such as described in section 147, and that section provided for the ringing of a bell at least 35 pounds in weight on each passing engine, at the distance of at least 80 rods from the crossing and continuously thereafter until the engine had passed the crossing. It also provided for the sounding of a steam whistle in addition to the ringing of the bell, but at this crossing the sounding of whistles had been prohibited by the Railroad Commissioners, exercising authority elsewhere reserved to them in the statute, and is not claimed to have been a signal required upon this occasion.

The exceptions set forth the following facts as undisputed:

"The gates were down as the plaintiff approached the crossing, and an outbound train, the engine of which stood on the crossing, was at rest on the nearer of the two tracks, discharging passengers at a long platform on her left. She passed from the sidewalk onto the platform, and stood at a point

near the train and at the left of the balance projecting from the gate arm, until the train moved by. She then started across the track behind the train, and was struck by the engine of a train on the inbound track, just as she had cleared the second rail."

As the exceptions further show, it also appeared without dispute that the plaintiff lived on the west side of the tracks, and when she came to the crossing was walking along the sidewalk on Wyoming avenue from the eastward of the tracks, on her way home; that while on the platform as above, waiting for the outbound train to move by, she was on the railroad's property, but that coincidently with the movement of the train she walked along inside the gate, between it and the train, until she reached the crossing planking, before starting across the track as above; that both gates were still down when she was struck by the engine as above; and that they remained down from the time she went within them, as above, until the inbound train by which she was struck had passed the crossing. She was thus at all times after leaving the platform within the limits of Wyoming avenue, though between the gates thereon.

It also appeared from the evidence on the plaintiff's behalf, that the bell on the engine which struck her was not rung as it approached the crossing; that the inbound train was going at the rate of 20 or 25 miles an hour, the engine emitting a very thick, stifling cloud of smoke; and the defendant concedes that these facts may be assumed as true for the purposes of the case.

If, as the defendant contends, the facts that the plaintiff had thus deliberately gone within the gates while they were down, and undertaken to cross the tracks while the gates still remained down, made her a trespasser, or deprived her of the status or rights of a traveler on the highway at the time of the accident, including the right to invoke the provisions of the above statute—the defendant's only duty was to refrain from reckless or willful misconduct as regarded her, and she was not entitled to recover, because there was not sufficient evidence of such reckless or willful misconduct on the defendant's part. If, however, the plaintiff had not lost her status or rights as a highway traveler by reason of the facts above referred to, she was entitled to recover for an injury to which neglect to give the required signals contributed, unless the defendant proved that her own gross or willful negligence contributed to such injury. Whether or not gross or willful negligence contributing to her injury on her part had been so proved, would in that case be a question for the jury, unless the evidence was such that reasonable men could reach no other conclusion.

[1] 1. Wyoming avenue is admitted to be a public highway, wherein the defendant, so far as appears, had no other rights than the right to run trains across it, interfering only so far as necessary for the safe passage of such trains with the public right of travel along the avenue and across the defendant's tracks therein laid.

The defendant's gates, when lowered across the avenue, may have been an indication of the presence of trains and of danger in crossing the tracks within the avenue, if its practice had been such as to make

them so. Baltimore, etc., R. R. Co. v. Landrigan, 191 U. S. 461, 475, 24 Sup. Ct. 137, 48 L. Ed. 262. As will appear, however, there was evidence tending to show that, under the circumstances existing at the time, the lowered gates did not necessarily indicate present danger from any train other than the outbound train then stopped at the crossing.

Her disregard of such warning as the lowered gates afforded may have prevented the plaintiff from claiming that she was on the highway between them, or the tracks therein, by the defendant's invitation or with its consent. But we are unable to regard the absence of such invitation or consent as in itself sufficient to make a lawful traveler on the highway a mere trespasser, so far as the railroad is concerned, without rights other than would belong to such a trespasser, and therefore outside the protection of this statute.

Granger v. Boston & Albany R. R. Co., 146 Mass. 276, 15 N. E. 619, relied on by the defendant, was not based upon failure to comply with the statutory requirement calling for continuous sounding of the bell while nearing a crossing, and the statutory provision that contributing negligence on the part of the person injured must have been gross or willful was not available to the railroad as a defense. Although it is said in the opinion that:

"Railroads, from the necessity of the case, have the right to the exclusive use of grade crossings when their trains are passing, and it is their duty to give suitable warning of such passing trains to travelers upon the highway. If they do this, and the traveler disregards the warning, and without sufficient excuse insists upon crossing, he does so at his own risk"

—and although the persons injured in that case had knowingly gone upon the tracks while the gates were down, it was held only that their own negligence had been the cause of their injuries, not that they were trespassers.

[2] The ruling requested on this point in the present case was, that "on all the evidence the plaintiff was a trespasser on the railroad at the time of the accident." If she could properly be called "a trespasser" in any sense, she was not one in the ordinary sense, and we cannot hold that the refusal to rule in the above terms was error.

[3, 4] Before it can be said that a highway traveler has insisted on passing over the tracks of a railroad at a grade crossing without sufficient excuse, and therefore at his own risk, we think it must at least appear that no warning required from trains approaching the crossing has been omitted. Otherwise "suitable warning" is not shown to have been given. The bell signals required by the statute here in question must be given while a train is approaching any crossing to which the statute applies, whether it is protected by gates or not. The first enactment of these provisions (St. 1871, c. 352) was entitled: "An act for the better protection of travelers at railroad crossings." In Commonwealth v. Boston & Me. R. R. Co., 133 Mass. 389, the particular act of neglect to give such signals is said to have been "singled out" and "deemed to be of such significance as to call for special legislation concerning it," and further to "stamp

the omission of this duty as sufficient to fix the responsibility of the corporation without any inquiry into the circumstances under which such omission occurred." We do not think that a traveler on the highway can be held to have forfeited the additional protection of an enactment of this kind merely because she is on the tracks between lowered gates, and in that sense is there without the railroad's consent or invitation.

[5, 6] That the lowered gates afforded warning that it was necessarily dangerous to attempt to cross at the particular time when the plaintiff went within them cannot be said to have been entirely clear upon the evidence. The fireman on the inbound train, called as a witness by the defendant, testified upon cross-examination:

"There are always people crossing the tracks there when there is a train in the depot. It was the custom for my train to slow down or hold up, and not cross that crossing until the other train had got by. I could not say that we were not supposed to go onto the crossing, but we were not supposed to go into the depot until the other train got off the crossing."

The fact that the gates were down was thus not the only fact to be considered upon the question of the extent of the warning which they afforded, or upon the question whether the plaintiff could be said to have gone within them without the defendant's invitation or consent. So far as consideration of these questions by the jury was important, the presumption is that they were properly instructed regarding them. It is true that the evidence above quoted, so far as it related to the custom described, was admitted against objection, that a motion to strike it out was denied by the court, and this denial assigned as error. But this assignment of error (the eleventh) is nowhere referred to in the defendant's brief, and we regard the evidence as competent. See La Fond v. Boston & Me. R. R., 208 Mass. 451, 457, 94 N. E. 693.

The refusal of a requested instruction that there was no evidence that the plaintiff was inside the crossing gates by invitation of the defendant is complained of in the seventh assignment of error, which, for the reasons above stated, we are also unable to sustain.

[7] Every person injured at such a crossing as this, by negligence such as the statute describes, is within its language, and proof establishing one or both the defenses expressly specified is the only method provided by its terms in which recovery for such injuries can be prevented. It is true that, notwithstanding the absence of any express limitation, the statute has been held inapplicable to persons on such a highway crossing for purposes other than travel, and therefore inapplicable to persons using the highway unlawfully by riding in an unregistered automobile. Chase v. N. Y. Central, etc., 208 Mass. 137, 157, 94 N. E. 377. But this plaintiff is not claimed to have violated any law, and for the proposition that the statute is inapplicable to a traveler on the highway not shown to have been there unlawfully we find no authority in Massachusetts or elsewhere. The attempt on such a traveler's part to cross tracks in disregard of the warning which lowered gates afford may well go far to prove that gross or willful negligence contributing to the injury of which the statute speaks; and

perhaps in most cases would be sufficient proof thereof. We are unable to hold it, however, enough to require a ruling by the court that no recovery can be had in any such case, even for an injury to which admitted failure on the railroad's part to give the special further warning required from the engine approaching the crossing has contributed.

2. The court refused a requested instruction that:

"On all the evidence the plaintiff assumed the risk of the consequences of her action as disclosed by the testimony."

If her rights were, as we have held, not merely those of a trespasser on the railroad, nor those of an unlawful user of the highway, we do not think she can be said to have assumed the risk of any injury whereof neglect to give the required signals was a contributing cause; and we cannot hold the refusal of this instruction erroneous. It may well be doubted whether the doctrine of "assumption of risk" could in any event afford a defense to a statutory action of this kind.

[8] 3. The court refused to direct a verdict in the defendant's favor, and refused to instruct, at its request, that on all the evidence the plaintiff could not recover. The court, in order to grant these requests, would have had to rule that the evidence showed the plaintiff guilty, as matter of law, of the gross and willful negligence which the statute makes a defense.

The evidence that the plaintiff did not undertake to cross the tracks, except on the highway and immediately behind the outbound train, has been above referred to, as has also the evidence that, when trains were discharging passengers at the station where the outbound train had just discharged, there were always people crossing the tracks between the gates, and that the inbound train had been accustomed to slow down or stop before crossing Wyoming avenue until the outbound train had gone by. The plaintiff's testimony was that she was very familiar with the crossing; that she had seen all this happen, and that, while crossing, she never expected a train from the direction from which the inbound train which struck her approached in the manner above described; and that, while waiting for the outbound train to pass, she had listened for the sound of other trains, but heard nothing, either then or at any time before her accident.

She further testified that until the outbound train had passed her she could see nothing of the inbound train; first knew of its presence while she was right between the outbound and inbound tracks on her way across; that she then looked in its direction, immediately saw the light on its engine, thought the engine was stopped, started then to move more quickly, and ran, instead of walking, as she had been doing, across the inbound track. The train, instead of being stopped, was in fact moving, and at the rate of 20 or 25 miles an hour (this is conceded for the purposes of the case, as has been stated), so that she failed to get clear of the inbound track in time to avoid it.

Upon such evidence, neglect to give the required signal might have been found to have contributed to the plaintiff's injury. And the jury might also have found the plaintiff excusable for believing that the gates were down only because of the outbound train; excusable in attempting to cross the tracks while the gates were down because she

had seen others do the same thing under circumstances similar, so far as she could tell; excusable for believing she could get across the tracks in safety when no engine bell had warned her that any other train was approaching the crossing; and excusable, in view, among other things, of the thick smoke from the engine, for thinking that the light she saw came from a train which was stopped. Even if they found the plaintiff negligent in her attempt to cross, notwithstanding the warning afforded by the lowered gates, or negligent in persisting in that attempt after seeing the light on the engine, we cannot say that they would have been bound to find her negligence gross or willful. That she had recklessly disregarded the probable consequences of a known and impending danger does not seem to us the necessary inference from the evidence before them.

In two Massachusetts cases under this statute the defense of gross or willful negligence on the plaintiff's part has been held by the court established by the evidence at the trial, so as to justify refusal to submit the question to the jury. Debbins v. Old Colony R. R., 154 Mass. 402, 28 N. E. 274 (1891); Emery v. Boston & Me. R. R., 173 Mass. 136, 53 N. E. 278 (1899). As pointed out in Kelsall v. New York, etc., R. R., 196 Mass. 554, 556, 82 N. E. 674, the first of these two decisions was by a divided court, and in both cases there were conceded facts constituting in substance the plaintiff's whole case.

In the subsequent Massachusetts cases, wherein the sufficiency of evidence at the trial to establish this defense has been involved, it was held that the question was for the jury. See Brusseau v. New York, etc., R. R., 187 Mass. 84, 72 N. E. 348; Kenny v. Boston & Me. R. R., 188 Mass. 127, 74 N. E. 309; Kelsall v. New York, etc., R. R., 196 Mass. 554, 82 N. E. 674; Slattery v. New York, etc., R. R., 203 Mass. 453, 459, 89 N. E. 622, 133 Am. St. Rep. 311; La Fond v. Boston & Me. R. R., 208 Mass. 451, 94 N. E. 693.

[9] It is seldom, according to the above decisions, that the court can declare the burden of affirmative proof sustained which rests upon a defendant relying in such a case as this on gross or willful negligence of the person injured; and it is not enough to justify such a ruling that the evidence relied on would warrant a finding that such gross or willful negligence had contributed to the injury. The question is still one for the jury, unless the evidence has left possible no other reasonable explanation of the accident, which, in our opinion, cannot be said of the evidence here under consideration. We therefore find no error in the above refusals to direct a verdict or to instruct as requested.

[10] 4. The court refused a request to rule that, even if the inbound train was going at the rate of 20 to 25 miles an hour, that fact was not evidence of negligence as between the plaintiff and defendant. There was no request to rule that there was no evidence of neglect to give the required signal on the defendant's part. Whether such negligence was proved or not was submitted to the jury under proper instructions, as must be assumed. The ruling requested related only to one feature of the evidence they were to consider, and there was no error in refusing to give it.

What has been said disposes of all the assignments of error upon which the defendant has insisted. We find no error in any of the refusals complained of.

The judgment of the District Court is affirmed, with interest, and the defendant in error recovers its costs of appeal.

PUTNAM, Circuit Judge, dissents.